Figueroa, Demandante y Apelante, *v.* Figueroa et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª., en causa sobre partición de bienes hereditarios e indemnización de daños y perjuicios.

No. 1319.—Resuelto en enero 28, 1916.

Partes Necesarias—Nuevas Partes a Iniciativa de la Corte—Objeción del Demandado sobre Defecto de Partes.—La corte puede, a iniciativa propia, ordenar que se incluyan las partes necesarias en una acción, pero no está obligada, a moción del demandado, y contra el deseo del demandante, a traer nuevas partes que no son necesarias, aunque sean partes que pudieron haber sido demandadas.

Id.—Renuncia por el Demandante—Sentencia.—Si un demandante, renunciando a cualquier remedio por el que se haría necesaria la presencia de otra parte, pide que se dicte sentencia por aquello a que sólo tiene derecho en cuanto respecta a los demandados que están ante la corte, y acerca de lo cual puede obtenerse completa resolución, la corte puede conceder tal remedio sin necesidad de incluir otras partes.

Id.—Defecto de Partes Demandadas—Temeridad del Demandante—Demandados—Apelación.—Cuando un demandante se opone con éxito a una excepción sobre defecto de partes demandadas, prescinde deliberadamente de hechos alegados en la contestación demostrativos de tal defecto, e insiste en continuar su acción contra los primitivos demandados exclusivamente, no puede ser oído en apelación de que se le ha obligado a establecer una segunda acción contra las personas así excluídas, y de que no haya sido obligado asimismo antes de dictarse sentencia, a incluirlas como demandadas.

Id.—Errores Motivados por el Apelante—Actitud Incompatible.—Un apelante no puede atacar con éxito un error que ha sido sugerido por él mismo, ni asumir ante el tribunal de apelación una actitud que es incompatible con la que adoptó durante el juicio.

PRUEBA TESTIFICAL—EVIDENCIA ORAL PARA CONTRADECIR UN DOCUMENTO—IMPE-
DIMENTO O ESTOPPEL—SECCIONES 101 DE LA LEY DE EVIDENCIA Y 1186 DEL
CÓDIGO CIVIL—MANIFESTACIONES—BUENA FE.—Los artículos 101 de la Ley
de Evidencia y 1186 del Código Civil determinan meramente el conocido prin-
cipio a la regla sobre prueba testifical para contradecir un documento y al
impedimento o *estoppel* por razón del mismo. Una manifestación que no es
una afirmación precisa de un hecho no implica un impedimento o *estoppel*
para negar el hecho. Un impedimento o *estoppel* no surge de una manifesta-
ción a menos que sea de la esencia del contrato. Una manifestación no
siempre es necesariamente obligatoria en una acción que no está fundada en
un contrato o que no ha sido establecida para hacer valer derechos que nacen
del mismo, en el cual se invoca dicho contrato no por las partes que lo han
otorgado sino por un extraño, no como un contrato de acuerdo con el cual se
alegan derechos, sino como prueba de una mera admisión favorable a la recla-
mación del extraño. Al determinar el efecto de una manifestación, ésta debe
ser interpretada en relación con todo el contrato. La parte que alega el
impedimento o *estoppel* debe haber sido inducida de buena fe al perjuicio.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Miguel Olmedo.*

Abogado de los apelados: *Sr. José E. Benedicto.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del
tribunal.

Los hechos y razones en los cuales la corte sentenciadora
fundó su sentencia están expresados en la opinión del juez
sentenciador, en la forma siguiente:

"Este pleito tiene por objeto, partición, adjudicación y entrega
de bienes hereditarios e indemnización de daños y perjuicios.

"La demandante litiga en su carácter de heredera de Manuel
Figueroa Peña, fallecido el 15 de septiembre de 1910, en Filadelfia,
Pennsylvania, E. U., estando casado entonces con Carmen Disdier,
sin haber otorgado testamento, y dejando como únicos y universales
herederos a sus hijos legítimos, la demandante y Jacinto, América y
Alcides Figueroa Disdier, y a la viuda en la cuota usufructuaria.

"Alega la actora:

"Que Manuel Figueroa Peña, a la época de su fallecimiento se
hallaba en posesión de las siguientes propiedades, pertenecientes a la
sociedad de gananciales:

"Que Carmen Disdier, la viuda, fué nombrada administradora
de los bienes relictos al fallecimiento de su mencionado esposo, y que
inventariados los bienes en el mes de diciembre de 1910, se otorgó,
en enero de 1911, por los referidos herederos ante el notario de esta
ciudad Don Adrián Agosto, una escritura de división en que se

acordó el derecho de cada uno de los herederos a su parte alícuota en la herencia, pero en que no se hizo partición material ni adjudicación a cada heredero de determinada parte de dichos bienes.

"Que en dicha escritura quedaron valorados aquéllos, para los efectos de la división solamente, en la suma de $5,784.32, y que acordada la mitad de proindiviso a la viuda, como gananciales, o sea $2,692.16, se acordó a cada uno de dichos cuatro herederos una cuarta parte en la otra mitad de dicho caudal también proindiviso, o sea un condominio de un valor de $673.04.

"Que no obstante esta división acordada, los bienes continúan en estado de indivisión, *administrados unas veces por la referida Carmen Disdier y otras, por cualquiera de los demandados,* pero nunca con el consentimiento de la actora, excepto para la administración con anterioridad a la división.

"Que la demandante en enero de 1913, adquirió de su hermana América Figueroa Disdier, el condominio que a ésta pertenecía con todos sus derechos y acciones en la herencia de su padre, notificando por esa misma fecha a la entonces administradora de los referidos bienes, Carmen Disdier de Figueroa, la mencionada compra.

"Que la demandante ha sido excluída de su posesión material en la parte alícuota de la herencia y del condominio comprado a su hermana, y que en ningún caso se le ha permitido acto alguno de administración ni consultado para nada que se relacione con dichos bienes, y que si bien, según su información, la viuda Sra. Disdier, ejerce actos de administración, éstos tienen lugar a nombre y por delegación de los demandados Jacinto y Alcides Figueroa Disdier, para eludir responsabilidades de éstos.

"Que para que continúe la indivisión no ha habido pacto expreso o tácito entre la demandante y demandados, y sí por obstinación de éstos, que han sido requeridos para la partición material y entrega a la promovente de sus condominios, dando el silencio como respuesta à sus solicitudes.

"Que se colacionen en los bienes hereditarios, $2,200 depositados por el causante a favor de los demandados allá por el mes de agosto de 1910.

"Que se incluyan también entre los bienes hereditarios los hornos de la panadería que fueron omitidos en el inventario, valorados en $800.

"Que las rentas del caudal ascienden a $110, o sea un total de $3,960 desde enero de 1911, del cual le corresponde una octava parte, por dos años, o sean $330 y una cuarta parte por un año, o sea $330

igual a un total de $660 en concepto de rentas por los referidos tres
años que los bienes han estado en comunidad, del cual total, dedu-
cidos $168 recibidos a cuenta de las rentas, le quedan $520 en con-
cepto de capital dejado de colacionar.

"Y pide la demandante un fallo condenando a los demandados,

"1. A colacionar en la herencia de su padre, Manuel Figueroa
Peña, la suma de $2,200 recibidos por ellos en efectivo o en un cheque.

"2. A incluir en el inventario la partida de $800, valor de los
hornos.

"3. A entregar a la demandante los dos condominios que a ella
le pertenecen en el caudal de la herencia, y pagarle la suma de
$1,200 e intereses, en concepto de valores dejados de colacionar y
rentas no satisfechas o aquella parte de dicha suma que arroje una
liquidación, más los honorarios de abogado y las costas.

"Los demandados en su contestación alegaron:

"Aceptando la capacidad y carácter con que la demandante en-
tabla este pleito, el fallecimiento abintestato del causante y la decla-
ratoria de herederos a favor de la viuda y sus hijos, la relación de
los bienes antes expresada con excepción de la parte que se refiere a
los 20 tableros, 4 palas, 2 cubos para hornos, 2 para los caldos, un
armario para caldos, un filtro, guardapolvos, tablas, balanzas, etc.,
que alega fueron comprados por los demandados después del falleci-
miento de Don Manuel Figueroa al precio de doscientos dollars.

"Admiten el hecho de la demanda relativo al nombramiento de
Da. Carmen Disdier, como administradora de los bienes de su difunto
esposo.

"Aceptan que se otorgó la escritura de división de bienes, pero
que por mutuo acuerdo de todos los interesados quedaron los bienes
pertenecientes al caudal hereditario, en común proindiviso.

"Alegan, además, que no se acordó nunca una división extra-
judicial; que dichos bienes siempre han sido administrados por la
viuda del causante Carmen Disdier, no por delegación de los deman-
dados, sino en su nombre propio, y fundándose para ello en su nom-
bramiento de administrador judicial, el que no ha sido revocado judi-
cialmente, ni por los interesados en la herencia; que los demandados
no han intervenido jamás en la administración de los bienes, y que
todos los interesados en el caudal hereditario, han admitido, por lo
menos de una manera tácita, la administración de la señora citada.

"Admiten los demandados la compra hecha por la actora a su
hermana América del condominio de ésta, y la notificación de esa
compra a la administradora Carmen Disdier.

"Aceptan que fueron requeridos para formalizar la partición y alegan que siempre han estado y cstán dispuestos a llevarla a efecto; pero que la demandante no ha hecho nada práctico tendente a ese fin.

"Niegan que Manuel Figueroa retirase fondos de un banco depositados a su nombre, para imponerlos a nombre de los demandados, y que en el inventario de los bienes hereditarios se omitió el horno de pan, el que dicen fué considerado, y se inventarió como parte del inmueble (la panadería) del que forma parte y es anexo.

"Niegan el hecho de la demanda relativo a las rentas, y en su lugar alegan que éstas son menores; que la demandante entregó a Doña Carmen Disdier una hija de aquélla para que atendiera a su sostenimiento y educación, habiéndole dejado las rentas de dichas propiedades para los alimentos de su hija, y que también dicha Sra. Disdier le ha entregado varias sumas por concepto de rentas.

"Y terminan los demandados pidiendo se declare sin lugar la demanda en cuanto a la colación de bienes y se ordene la venta en pública subasta de las fincas poseídas en común proindiviso, la distribución del producto entre todos los herederos con costas, gastos y honorarios a la demandante.

"Señalado este caso, se celebró el juicio oral el día 6 de noviembre de 1914, con asistencia de las partes y sus respectivos letrados, se practicó la prueba de ambas partes, consistente en documental y testifical, y se sometió el caso por medio de *briefs* que se presentaron oportunamente.

"Hemos estudiado las cuestiones debatidas con mucho cuidado.

"De los pronunciamientos que solicita a su favor la demandante, descartamos, desde luego, el primero, o sea, el que se refiere a la colación de los $2,200, porque no se ha probado la entrega de esa cantidad a los demandados por su padre, ni la imposición por éste en banco a nombre de ellos.

"Tampoco nos detenemos en la segunda petición, o sea la inclusión en el inventario de los hornos valorados en $800 y la distribución de esta suma entre los interesados.

"Tanto en el inventario como en la escritura de partición se relacionó 'una casa propia para la industria de panadería,' detallando sus accesorios. Entendemos que en el término *panadería* se incluyen los hornos, y aun aceptando que en el valor de la panadería no estuviera comprendido el de los hornos, esto en nada perjudicaría a la demandante, porque ella tiene un condominio en la finca de una cuarta parte, y sea cual fuere el precio, su participación en la misma, siempre será una, que no depende del valor que pueda dársele, sino

de su derecho determinado por la escritura de división y la compra de las acciones y derechos a su hermana América.

"En cuanto a la división del caudal, los demandados se avienen a ella.

"La única cuestión a resolver, es la referente al pago de las rentas no percibidas.

"Para ello debemos ver, si los demandados han estado en la posesión y disfrute de los bienes hereditarios.

"La propia demandante en su alegación sexta de la demanda no afirma que los demandados estén administrando los bienes. Vacila en la exposición de los hechos, diciendo que los bienes continúan en la indivisión, administrados *unas veces por Carmen Disdier, esposa del causante de la herencia bajo el nombramiento primitivo de administrador judicial hecho por la Corte de Distrito de San Juan, otras veces por cualquiera de dichos demandados Jacinto y Alcides Figueroa.*

"La misma Carmen Figueroa al ser examinada como testigo, a preguntas del abogado de los demandados, contesta:

"Antes de la escritura de división ¿quién administraba? A mi madre la nombraron administradora aquí en la corte, pero cuando yo ví que le pasó en venta sus bienes a mis hermanos, pues no la consideré administradora.

"Esta es toda la prueba aportada para demostrar que los demandados están en la administración de los bienes, prueba que no puede llevarnos a una conclusión categórica en favor de la actora.

"En cambio, y aparte de que la demandante alega que Doña Carmen Disdier ha desempeñado la administración con posterioridad a la escritura de división otorgada en enero de 1911, su declaración, cuando dice que no la considera administradora, está en contradicción con la prueba testifical de los demandados, de la cual copiamos los particulares que van a continuación y que aparecen en el interrogatorio dirigido a Jacinto Figueroa.

"¿Quién hizo la liquidación? Mi madre.

"¿Quién siguió administrando después de la liquidación? Pues mi madre.

"¿Alguno protestó de esa administración? No, señor. ¿Todos recibían su participación en el producto de los bienes? Todos.

"¿Se le pidió alguna vez a su señora madre por alguno de los interesados que abandonase la administración de los bienes? No, que yo sepa.

"Y además de estas negaciones rotundas frente a las alegaciones inciertas y débiles y evasivas contestaciones de la demandante, tenemos en el récord, admitido como prueba, un documento que dice:

"'He recibido de Da. Carmen Disdier viuda de Figueroa la suma de diez y seis pesos a cuenta de las rentas que me correspondan en mis participaciones en la herencia de mi padre por el mes de mayo. Carmen Figueroa. Santurce, mayo 30 de 1913. Son $16.'

"Como se ve, este documento data de 30 de mayo de 1913; es decir, que es posterior al mes de enero de 1911, en que se hizo la escritura de división, y constituye una prueba de que los demandados no están en la administración de los bienes y sí su madre, Carmen Disdier.

"Esta fué nombrada administradora judicial por la corte, y parece que por corruptela, después de la división siguió administrando, según resulta de la prueba, sin que su nombramiento de tal administradora haya sido revocado ni dada por finiquita la administración.

"Carmen Disdier no es parte en este pleito. Y ¿cómo puede condenarse a los demandados a pagar rentas de bienes que no se ha probado están usufructuando?

"El hecho de que a la demandante no se le consultó sobre arrendamientos y otros actos de administración, no tiene importancia. Un administrador según el artículo 43 de la Ley de Procedimientos Legales Especiales está autorizado para hacer contratos de arrendamientos de establecimientos fabriles cuya renta anual no excede, como la de la panadería de este caso, de mil dollars.

"Sería muy difícil en casos de bienes pertenecientes a varios herederos, obtener el consentimiento de éstos para los actos del administrador.

"Estando los bienes bajo la administración de Da. Carmen Disdier, que no es parte en este pleito, no procede una sentencia contra los demandados por rentas retenidas, y, por tanto, no hay necesidad de entrar a determinar la cuantía de éstas.

"Por las razones expuestas la corte declara sin lugar la demanda en cuanto a la colación de los $2,200, la inclusión en el inventario de los hornos y su distribución entre los interesados y el pago de las rentas reclamadas; y con lugar en cuanto a la entrega de los dos condominios sin especial condenación de costas. El secretario registrará una sentencia de acuerdo con esta opinión. San Juan, P. R., enero 8, 1915. Firmado, Félix Córdova Dávila, Juez de Distrito, Sección Primera.''

La demandante apela "de aquella parte de la sentencia * * * por la cual se deniega a la demandante el·derecho a la suma de quinientos dollars ($500) que en concepto de rentas sobre sus dos ·condominios en la herencia de su padre se le adeudaba en enero, 1914, y reclama de los demandados, o aquella suma que de una liquidación practicada resultare en deber los demandados a la demandante en la fecha en que deba satisfacerse la sentencia que se dictare."

Los siguientes son los errores que han sido alegados por la apelante:

"I. La corte cometió error al resolver en efecto, después del juicio, sin la previa alegación de la parte demandada, o sin la moción espontánea de la corte en la vista de la causa, que ha habido defecto de partes demandadas en lo que respecta a la acción por las rentas no satisfechas.

"II. Error en la apreciación de la prueba al no darse todo el· alcance y valor probatorio al documento que contiene las cuentas finales de la administración judicial (Exhibit E, Rec. pág. 49), así como a la notificación que hace el abogado de la administradora a la demandante de que ha cesado la *administración judicial.*

"III. Error al resolver la corte que la responsabilidad de un heredero co-administrador, demandado por los .actos de su asociado, en que ha coadyuvado o ha tenido *connivencia,* no es *solidaria* entrambos.

"IV. Error en la apreciación de la prueba al resolver la corte que el acto de firmar los demandados-apelados un *contrato de arrendamiento* (Exhibit C, Rec. pág. 45), en su carácter de dueños de la propiedad no es un acto de administración y de dominio que les obliga a rendir cuenta de las rentas al heredero copartícipe excluído.

"V. Error en la apreciación de la prueba al considerar la corte que el recibo dado por la demandante-apelante (Rec. pág. 63) a Carmen Disdier por $16 a cuenta de sus rentas, cuando ya no era ésta administradora judicial, confiere a dicha Carmen Disdier capacidad o carácter alguno.

"VI. La corte erró al no conceder a la demandante-apelante las rentas que se piden en la súplica de la demanda.

"VII. Se ha cometido error al no ordenar la corte una 'liquidación,' cuando de la prueba resulta que durante una época (1911 y parte de 1912), no se pagaron las rentas a la demandante-apelante; que los pagos o abonos hechos se aceptaron con la correspondiente

reserva y no cubrían la cantidad debida; que nunca se rindió cuenta, y que en la súplica se pide fallo por $500 de rentas no satisfechas, o la suma que resulte deberse a la demandante después de una liquidación.''

En lo que respecta al primero de los errores alegados que de tal modo han sido especificados el razonamiento del apelante es que como consecuencia de la sentencia apelada la demandante está obligada a establecer una nueva acción contra la actual cobradora de las rentas; que por tal motivo se ve compelida a litigar en dos acciones lo que de igual manera podía ser resuelto en una sola; que habiendo la anterior administradora hecho traspaso de sus bienes a los demandados en esta acción, es pues ahora insolvente, y en todo caso que si ella como demandada en dicha nueva acción probara que aunque cobró las rentas éstas en realidad pasaron a manos de los demandados en este caso absueltos ya de toda responsabilidad por virtud de la sentencia que ahora se considera, entonces la demandante quedaría enteramente desprovista de todo remedio; que el defecto de partes demandadas es una cuestión de defensa y debió haber sido alegado por los demandados, ya en la forma de una excepción previa, o de una moción o en la contestación; que una acción de esta clase no debe ser juzgada separadamente, y que antes de dictarse sentencia en este caso la corte debió haber procedido de conformidad con el artículo 74 del Código de Enjuiciamiento Civil, que entre otros particulares prescribe lo siguiente:

''* * *; pero cuando no se puede llegar a una completa resolución de la controversia sin la presencia de otras personas la corte deberá entonces disponer la comparecencia de éstas, y acto seguido la parte a quien la corte lo ordene deberá hacer que se entregue en la forma general prescrita para las citaciones, una copia de la dispuesta en el pleito y de la orden antedicha, a cada una de las partes cuya comparecencia se hubiere ordenado, las cuales tendrán diez días, o el tiempo que dispusiere la corte, después de notificada dicha citación, para comparecer y alegar su derecho; y en caso de que dicha parte dejase de comparecer y alegar en juicio dentro del plazo

señalado, la corte podrá disponer que se haga constar su ausencia y proceder como en los demás casos de rebeldía, o dictar nueva orden de acuerdo con lo que el estado de la causa y la justicia exigieren : * * *."

Dejando a un lado la insinuación relativa a la insolvencia de Carmen Disdier y la fútil consideración respecto a lo que pudiera revelar o nó la prueba si se estableciera una nueva acción, podríamos sentirnos fuertemente inclinados a sostener la alegación de la apelante en cuanto a este punto si la premisa referente a no haber promovido los demandados tal cuestión en la corte inferior en realidad estuviera bien fundada y si la misma demandante no fuera responsable más que ninguna otra persona de la triste situación en que ahora se encuentra.

Pero en primer lugar, como ha dicho el juez sentenciador y según aparece de los autos, la demanda misma deja mucho que desear en su vaga alegación respecto a la actual administración de los bienes. La alegación sexta de la demandante a que se ha hecho referencia en la opinión citada anteriormente dice lo que sigue:

"Y dicha demandante alega que a pesar de la división acordada extrajudicialmente de dichos bienes, como queda dicho, y de ser éstos perfectamente divisibles, los referidos bienes han continuado y continúan aún en estado de indivisión hasta la fecha, administrados unas veces por la referida Carmen Disdier, esposa del causante de la herencia, bajo el nombramiento primitivo de administradora judicial, hecho por la Corte de Distrito de San Juan con anterioridad a dicha escritura de división, otras veces por cualquiera de dichos demandados Jacinto y Alcides Figueroa Disdier, pero nunca con el consentimiento de dicha demandante, excepto para la administración de dichos bienes con anterioridad a dicha división; siendo así que la dicha demandante ha sido excluída no solamente de posesión material de su parte alícuota en la herencia, y del condominio adquirido por ella de su hermana América Figueroa Disdier, sino que en ningún caso se le ha permitido acto alguno de administración, ni se le ha consultado para los arrendamientos de dichos bienes, o gastos hechos en ellos, ni se le ha rendido cuenta de la administración de los mismos, a partir de la escritura dicha. Y la demandante alega,

según información y creencia, que si bien la viuda de dicho Manuel Figueroa ejerce todavía actos de administración en dichos bienes, como lo son el cobro de rentas y firma de contratos de arrendamientos, estos actos tienen lugar a nombre y por delegación de dichos demandados Jacinto y Alcides Figueroa Disdier, con el fin de eludir éstos toda responsabilidad, puesto que dicha viuda hizo cesión y traspaso de su condominio de una mitad proindivisa en dichos bienes, a raíz de firmarse la escritura de división, por enero, 1911, a favor de los referidos demandados, o uno solo de ellos, dicho Jacinto Figueroa Disdier.''

Los demandados prontamente formularon excepción previa a la demanda, alegando entre otros fundamentos, los siguientes:

''2ª. Que la demanda es ambigua, ininteligible o dudosa * * *.

''*Se funda esta excepción en que en el hecho sexto de la demanda se expone que los bienes que pertenecieron al caudal hereditario de Don Manuel Figueroa fueron administrados por su viuda Carmen Disdier sin que se le diese participación alguna en la administración a la demandante;* y en el hecho décimo de la misma demanda se expone que dicha demandante ha recibido de las rentas o productos de los referidos bienes la suma de $168; lo que envuelve una notoria contradicción.

''3ª. Que existe un defecto de partes demandadas * * *.

''Se funda *en que alegándose en la demanda que los bienes han sido y son administrados por Carmen Disdier,* es ella quien debe responder de las gestiones de su administración y no los demandados.

''4ª. Que la demanda no aduce hechos suficientes para determinar una causa de acción, o sea el número sexto del artículo 105 de la Ley de Enjuiciamiento Civil.

''Se funda esta excepción en que en el apartado noveno de la demanda se expone que el causante Don Manuel Figueroa consignó cierta cantidad en el banco donde acostumbraba hacer sus depósitos a favor de los demandados Jacinto y Alcides Figueroa; sin expresar el banco donde se hizo la consignación; dato indispensable para que los demandados puedan tomar informes y preparar su contestación en cuanto a ese extremo de la demanda.

''Además en que se pide a los demandados rendición de cuentas de la administración y entrega de rentas y productos, *y en la misma demanda se alega que no han sido ellos ni son en la actualidad los administradores de dichos bienes hereditarios, sino que lo ha sido y*

*es en la actualidad Da. Carmen Disdier;* y si bien es cierto que en el hecho sexto de la demanda se expone que algunas veces dicha Carmen Disdier administraba por cualquiera de los demandados, éstos presuponen la existencia de un mandato expreso o tácito, pero aun así no serían los demandados, o sean los mandatarios, responsables, sino que la responsabilidad de la administración sería exclusivamente de la demandante.

"Por cuyas razones y en cuanto a esos extremos, la demanda no aduce hechos bastantes para determinar una causa de acción contra estos demandados."

El verdadero motivo por el cual la demandante no solamente prefirió omitir el nombre de Carmen Disdier como parte demandada en la fecha de la presentación de la demanda sino que tan tenazmente se mantuvo al parecer en el propósito firme de excluirla del litigio de todos modos, aun después de haber sido formulada la excepción previa en vez de estar conforme con ésta y aprovechar esa oportunidad para subsanar este defecto de partes mediante enmienda, al cual de una manera tan clara se le llamó la atención, es un hecho que no aparece claramente.

Cualquiera que sea el mérito que pueda haber o nó en los señalamientos segundo y cuarto es difícil comprender por qué tenía la corte sentenciadora que haber desestimado el tercer fundamento de excepción (*supra*), a no ser que procediera basada en la muy clara teoría de que siendo Carmen Disdier a lo sumo verdadera parte demandada más bien que absolutamente necesaria, no incumbía a la corte obligar a la demandante en contra de su deseo, a proceder contra su madre cuya presencia en manera alguna era indispensable para la resolución completa de la controversia en cuanto a las partes que ya estaban ante la corte y cuya exclusión difícilmente podría causar perjuicio a los demandados sino solamente al inconveniente que en el futuro pudiera resultar a la obstinada demandante.

"La corte puede, a iniciativa propia, ordenar que se incluyan las partes necesarias, pero no traerá nuevas partes a menos que su presencia sea necesaria a moción del demandado y contra el deseo del

demandante.   Si una corte en un juicio dicta una orden de que se permita comparecer y contestar a ciertas personas debido a la suposición errónea de que son partes necesarias, dichas personas no son interventores, y no se convierten en partes en la acción.   Y si el demandante elige renunciar a cualquier remedio por el que se haría necesaria la presencia de otra parte, y pide que se dicte sentencia por aquello a que solamente tiene derecho en lo que respecta a los demandados que ya están ante la corte, y acerca de lo cual puede obtenerse una completa resolución, la corte puede conceder el último remedio sin la inclusión de otras partes.   La frase 'cuando una determinación completa,' etc., significa que hay personas que no son partes cuyos derechos deben ser fijados y resueltos antes que los derechos de las partes en el pleito puedan ser determinados.   1 Sutherland, Code Pleading, Practice and Forms, Sec. 692.''

Además, después que la excepción previa relativa al defecto de partes demandadas había sido desestimada, los demandados insistieron nuevamente en este punto por medio de una alegación específica de conformidad con la negativa de la sexta alegación de la demanda, a saber, ''que jamás se acordó entre las partes una división extrajudicial de los bienes hereditarios, y si éstos han continuado indivisos ha sido por acuerdo de los interesados.   Que dichos bienes han sido siempre administrador por la viuda del causante Da. Carmen Disdier, no por delegación de los demandados, sino en su nombre propio, y fundándose para ello en su nombramiento de administradora judicial, que no le ha sido revocado judicialmente, ni por los interesados en la herencia. Que los demandados no han intervenido jamás en dicha administración, no habiendo nunca tratado de eludir la responsabilidad de sus actos, como se alega en la demanda.   Que todos los interesados en el caudal hereditario han admitido, por lo menos de una manera tácita la administración de Da. Carmen Disdier, la que repetidas veces ha consultado a la demandante sobre los arrendamientos y otros actos de administración, habiéndole además rendido la correspondiente cuenta de administración.   Que si la demandante ha sido excluída de la posesión, no ha sido por la voluntad de los

demandados, sino por la imposibilidad física y legal de poseer un condominio proindiviso."

Y este claro aviso del resultado probable en caso de haber prueba suficiente en este sentido también parece que no fué tomado en consideración.   Además, después de la vista y al solicitar la demandante enmendar su demanda para ajustarla a la prueba presentada, ni siquiera· entonces se sugirieron nuevas partes en la enmienda propuesta o la celebración de otra vista.

Habiéndose opuesto con éxito la demandante a la excepción previa sobre defectos de partes demandadas; habiendo prescindido deliberadamente de la alegación terminante que acaba de citarse, e insistido tenazmente durante todo el procedimiento en continuar su acción contra los primitivos demandados solamente, en completa desatención del triple aviso contenido en los dos escritos de defensa a los que ya se ha hecho referencia y en la prueba de la defensa en el mismo sentido, no puede ser oída ahora en queja· de que se le ha obligado a establecer una segunda acción debido a la supuesta omisión de la corte de distrito *sua sponte,* y antes de dictar sentencia obligarla, no obstante su disgusto manifiesto, a incluir entre dichos primitivos demandados a la referida Carmen Disdier de quien tan repetidas veces llamaron los demandados la atención a la demandante como verdadera parte demandada, aunque no absolutamente necesaria.

Que la apelante no puede atacar con éxito un error que ha sido sugerido por ella misma, ni asumir ante el tribunal de apelación una actitud que es incompatible con la que adoptó durante el juicio, es una cuestión demasiado elemental para que sea necesario discutirla con mayor extensión.   Véase 2 R. C. L. pág. 79, sección 56, pág. 183, sección 156, pág. 238, sección 198; 3 C. J. pág. 718, sección 618.

Al discutir el segundo señalamiento de error, la apelante impugna la manifestación hecha por la corte de que la primitiva administradora judicial "parece que por corruptela, después de la división siguió administrando los bienes según

resulta de la prueba, sin que su nombramiento de tal administración jamás haya sido revocado, ni dada por finiquita la administración,'' y emprende una discusión algo extensa para probar que después de presentadas las cuentas finales de dicha administración y de habérsele notificado por conducto de su abogado de haber terminado su administración, no puede ser ella considerada por más tiempo como una administradora *de facto,* o en otra forma, y que si no es una administradora viene a ser una mera agente o mandataria, por cuyos actos son responsables los demandados como principales.

No creemos que sea necesario discutir en sus detalles los razonamientos del apelante en cuanto al particular.   Puede admitirse para los fines de esta opinión que quizás existe un número de diferencias características que podrían establecerse entre un administrador judicial y un simple agente o mandatario; pero se nos hace enteramente imposible comprender, y la apelante no nos ha indicado con algún grado de precisión, en qué forma de acuerdo con los hechos de este caso, ha sido ella verdaderamente perjudicada en algún derecho sustancial por la confusión que haya podido existir en la mente del juez sentenciador acerca de este punto en concreto.

Es verdad que el juez sentenciador llama la atención en el curso de su opinión hacia el hecho de que ''un administrador, según el artículo 43 de la Ley de Procedimientos Legales Especiales está autorizado para hacer contratos de arrendamiento de establecimientos fabriles cuya renta anual no exceda, como la de la panadería en este caso, de mil dollars.''   Y puede ser que la corte sentenciadora incurriera en error en tanto se inclinó a considerar a Carmen Disdier de todos modos como administradora judicial después de haber presentado sus cuentas finales y de habérsele notificado que había terminado en ella.  · Los apelados en verdad admiten otro tanto en su alegato.   Pero no creemos que sea necesario resolver ahora esta cuestión.

La resolución del caso en la corte de distrito dependió claramente de la conclusión a que llegó el juez sentenciador de acuerdo con la prueba de la defensa de que los demandados en realidad jamás intervinieron en el verdadero gobierno general, administración o dominio de los bienes pertenecientes al caudal hereditario, ya como principales, co-administradores, o en otro carácter, ni recibieron, manejaron o disfrutaron de ninguna de las rentas que pretende recobrar la demandante, sino por el contrario que la primitiva administradora Carmen Disdier después, y a pesar de la rendición de sus cuentas finales, de la ejecución de la llamada "partición," del aviso que se le dió de haber terminado en la administración y del traspaso de sus bienes a sus hijos en realidad había quedado sola, absoluta y exclusivamente con el manejo y gobierno de dichos bienes, pagando las contribuciones y afrontando todos los gastos corrientes, cobrando las rentas y verificando todos los pagos que se hicieron, tanto a los demandados, como a la demandante en esta acción.

Con este criterio acerca de la prueba, no siendo Carmen Disdier parte en este pleito, la sentencia dictada era inevitable y la cuestión promovida en el segundo señalamiento viene a ser una simple cuestión abstracta, y el error, si alguno se cometió, no parece ser perjudicial.

Y en este caso también la opinión de la corte meramente parece seguir y adoptar la primitiva teoría de la demandante respecto al supuesto carácter judicial de la verdadera administración, en completa armonía con la alegación sexta de la demanda, *supra*, a saber, que los bienes de la herencia, a pesar del convenio sobre partición y de su naturaleza divisible, continuaban todavía en estado de indivisión y "administrados unas veces por la referida Carmen Disdier, esposa sobreviviente del causante de la herencia, *bajo el nombramiento primitivo de administradora judicial* hecho por la Corte de Distrito de San Juan con anterioridad a dicha escritura de división, y otras veces por uno u otro de dichos

demandados   *  *   *." Así pues, si algún error se cometió
puede decirse razonablemente que fué sugerido por la de-
mandante en su escrito original, para no hacer mención de
la prueba y de su actitud conforme con la misma durante
el juicio y no puede ahora quejarse del resultado natural al
cual ha contribuído tanto con su propia conducta.

La proposición enunciada en el tercer señalamiento ex-
presa simplemente una cuestión imaginaria. La apelante da
mucha importancia a la última parte de la alegación sexta
de la demanda, a la cual ya se ha hecho referencia en par-
ticular, por imputarse en ella connivencia, pero parece olvi-
darse de que tal connivencia, lo mismo que otro hecho cual-
quiera debe ser probada como también alegada. La corte
inferior no resolvió como alega la apelante, sino que más
bien declaró probado en vista de toda la prueba, según se
ha dicho, que los demandados no eran co-administradores en
unión de Carmen Disdier y que para todos los fines y objetos
prácticos no habían participado en absoluto en la verdadera
administración de los bienes. No existiendo base alguna en
los autos para la premisa en cuestión y no habiendo formu-
lado la demandante objeción a ninguna de las pruebas pre-
sentadas, no tendría objeto alguno que hiciéramos un aná-
lisis acabado de la argumentación de la demandante sobre
este punto. En tanto en cuanto en ella está envuelta la
teoría de una administración judicial *de facto* paradójica que
atribuye la apelante a la corte inferior ya ha sido resuelto
en la consideración que hemos hecho del segundo señala-
miento. Y en lo que respecta a la alegación de la respon-
sabilidad solidaria que surge del proceder de los demandados
al otorgar conjuntamente con dicha Carmen Disdier el con-
trato de arrendamiento mencionado en el cuarto señalamiento;
y no habiéndose formulado en absoluto objeción alguna ni
tomado ninguna excepción, como queda expuesto, dicha ale-
gación debe prevalecer o caer con la proposición enunciada
en ese señalamiento que indica el único fundamento en los

autos por el que pudiera alegarse cualquier error en este sentido.

La cuestión promovida en el cuarto señalamiento es algo más importante. El contrato de arrendamiento a que en el mismo se hace referencia, es en verdad según el criterio de la demandante, el punto sobre el cual gira todo el caso y no puede negarse que el otorgamiento de dicho instrumento por los demandados es una circunstancia muy significativa que merece detenida consideración, a la luz de la teoría de la demandante sobre el caso y en relación con todas las demás pruebas que han sido presentadas. Además, existe cierta atmósfera que rodea toda la controversia que no tiende a inspirar absoluta confianza en la prueba de los demandados y que sugiere una fuerte sospecha de que la demandante tal vez tiene verdadero motivo para quejarse del trato que ha recibido, a pesar de no haber podido establecer su caso. Sin embargo, ambos demandados subieron a la silla de los testigos y declararon extensa y detalladamente, sin objeción por parte de la demandante, respecto a la verdadera administración de los bienes por la madre Carmen Disdier, así como también acerca de la intervención que tuvieron ellos en dichos bienes, no habiendo la demandante hecho uso en absoluto del privilegio que tenía de hacer un fuerte examen de repreguntas en cuanto al particular. Por qué renunció a la oportunidad que de tal modo se le ofreció para exigir una explicación completa del conflicto entre los hechos según han sido expresados en el contrato de arrendamiento otorgado por los demandados de acuerdo con la interpretación que les da la demandante y los hechos tal como han sido declarados por ellos, es otro de los varios aspectos por considerar en el caso y que tiene que quedar como aparece envuelto en el misterio.

Y además, en este caso la corte no resolvió como alega la apelante que el otorgamiento de un contrato de arrendamiento por los demandados como dueños que alegan ser de cierta propiedad no es un acto de administración y de do-

minio que lleva consigo la obligación de rendir cuentas a un heredero o condueño que ha sido excluído, sino que la corte simplemente declaró probado en vista de toda la prueba, incluyendo el contrato de arrendamiento, y no obstante su otorgamiento por los demandados como arrendadores en común con Carmen Disdier, que dicha Carmen Disdier en realidad ejercía el único y exclusivo manejo y dominio de la propiedad perteneciente a la herencia.

Toda la teoría de la demandante sobre el caso se basa, como hemos dicho, en este contrato de arrendamiento con ayuda de presunciones, deducciones y teorías que por fuertes, lógicas y razonables que sean en abstracto, o de ser aplicadas a este detalle en particular, consideradas aisladamente y solas no es posible que puedan subsistir ante la prueba de la defensa de ser ésta verdadera y que la corte sentenciadora aceptó como cierta. Toda la argumentación de la demandante, en tanto puede encontrarse en los autos una base sólida para la misma, pudo de igual modo haberse fundado en un solo señalamiento, o sea, que la corte sentenciadora cometió error al fundar su opinión en los hechos tales como fueron declarados por los testigos de la defensa y corroborados en cierto modo por las admisiones de la demanda, la declaración de la demandante y el recibo firmado por ella que fué introducido como prueba por los demandados, en lugar de seguir a ciegas el curso sugerido por el contrato de arrendamiento con las presunciones naturales y deducciones lógicas que surgen del mismo, a la luz de ciertas otras circunstancias más o menos sospechosas y en completa desatención de todas las demás pruebas que fueron presentadas.

Mucho se ha insistido en el artículo 1186 del Código Civil que prescribe lo siguiente:

"Los documentos públicos hacen prueba, aun contra tercero, del hecho que motiva su otorgamiento y de la fecha de éste.

"También harán prueba contra los contratantes y sus causahabientes, en cuanto a las declaraciones que en ellos hubiesen hecho los primeros."

Ambos de estos preceptos, en tanto son aplicables a los hechos de este caso pueden resumirse en la expresión simple y evidente por sí misma de que el contrato de arrendamiento otorgado por los demandados hace prueba contra todo el mundo del hecho de dicho arrendamiento, y particularmente y *prima facie,* aunque no de modo concluyente en cuanto al hecho principal en contra de tales demandados, de que son ellos como en el mismo alegan ser "los dueños y como tales los administradores" de la propiedad en particular que ha sido arrendada por ellos. Cualquiera que fuera la fuerza y el efecto de dicho instrumento como prueba contra los demandados en esta acción en un pleito establecido para hacer cumplir, o por incumplimiento de dicho contrato de arrendamiento, o de sus términos y condiciones, sin embargo, la cuestión relativa al valor probatorio y fuerza persuasiva de sus cláusulas en cuanto por ellas se establece el hecho principal a que en las mismas se hace mención, considerado dicho contrato meramente como una parte en todo el volumen de pruebas en una acción en que no están envueltos derechos garantizados por el mismo cuando se invoca el contrato, no por las partes que lo han otorgado sino por un extraño, no como un contrato de acuerdo con el cual se alegan derechos, sino como prueba de una mera admisión que favorece la reclamación de dicho tercero; la cuestión de si tal admisión hecha bajo circunstancias que excluyen la doctrina del impedimento (*estoppel*) es concluyente o puede ser contradicha y regulada por otra prueba adecuada, y la cuestión del grado de prueba necesario para anular dicha admisión solemne y los principios por los cuales debe regirse la corte sentenciadora al apreciar semejante prueba contradictoria y resolver el hecho principal son enteramente otra cuestión. IV Wigmore, sec. 2425, 2446, 2470, 1058, 1060; *Dudley* v. *Niswander & Co.,* 64 S. E. 745.

Los demandados no niegan el otorgamiento de este contrato y hasta mencionan algunos otros actos aislados de carácter administrativo, pero de esa mera transacción no se

deduce necesaria e inevitablemente con relación a una propiedad en particular, que los demandados realmente administraban los bienes o que en verdad cobraron y recibieron las rentas que vencían de acuerdo con dicho contrato, o que no hayan de ser tomadas en consideración las circunstancias que concurrieron al otorgamiento del contrato en tanto puedan servir de ayuda al determinar la verdadera significación, importancia relativa y valor probatorio de las mismas.

Dada la condición de los bienes en cuestión a la fecha de dicho arrendamiento, parece la cosa más natural que un futuro arrendatario se negara a aceptar un instrumento otorgado por la viuda únicamente y que insistiera en que dicho documento lo firmaran los mismos herederos además de la administradora *de facto*.   Expresa uno de los demandados que él firmó simplemente porque se le dijo que era necesaria su firma.   Es de sentirse que no se haya aclarado un poco más este punto, pero como ya hemos indicado, la demandante no hizo ninguna objeción a esta manifestación ni a ninguna otra declaración respecto a la verdadera administración y en el examen de repreguntas no prefirió observar el sistema de investigación que así se le sugirió.

El contrato de arrendamiento no dice que los arrendadores que en él se mencionan son administradores en común de los bienes sino que solamente expresa que ellos son los "dueños y como tales administradores" de una panadería objeto de dicho contrato, y además expone inmediatamente de modo expreso y específico que "sus condominios en la casa descrita en que está construída le resultan a Da. Carmen Disdier y sus hijos Jacinto N., América y Alcides R. Figueroa en la partición de bienes quedados al óbito de Manuel Figueroa Peña, según escritura de 11 de febrero, 1911, ante el Notario D. Adrián Agosto."

De manera que la manifestación anterior respecto al dominio y consiguiente administración está determinada claramente quedando indicada con claridad la naturaleza precisa y extensión de dicho dominio y administración por medio

de referencia expresa a la fuente del título.  Se deduce,
pues, que el texto del contrato de arrendamiento en el cual
se funda insistentemente la demandante debe ser interpretado a la luz de su contexto, y de los hechos tal como aparecen de la escritura de partición a las cuales se hace referencia directa y específica.

Pero la apelante considera extensamente el gran peligro
que hay en admitir prueba para contradecir la solemne exposición de los hechos contenidos en un documento público
y cita en relación con esto los párrafos 2do. y 3ro. del artículo 101 de la Ley de Evidencia que establecen como presunciones concluyentes, las siguientes:

"2. La verdad de los hechos relatados, en la relación contenida
en un documento escrito, entre las partes interesadas en el mismo o
sus sucesores en interés por título adquirido posteriormente; pero
esta regla no será aplicable a la relación de una compensación.

"3. Siempre que una de las partes hubiere, por su propia declaración, acto u omisión, inducido intencional o deliberadamente a
otra de las partes, a creer en la verdad de una cosa y obrar en esa
creencia, no se podrá en ningún litigio a que diere lugar dicha declaración, acto u omisión, permitir a aquella que la refute.

El artículo citado, así como el del Código Civil, *supra*,
determina meramente el conocido principio referente a la
regla sobre prueba testifical y al impedimento (*estoppel*)
por razón de un documento, y la apelante prescinde enteramente de la limitación expresa y elemental en cuanto a las
partes y demás personas interesadas y del principio rudimentario de que una manifestación que no equivale a una
afirmación precisa de un hecho no constituye un impedimento
(*estoppel*) para negar el hecho de que un impedimento (*estoppel*) no surge de una manifestación a menos que sea de
la esencia del contrato; que una manifestación no siempre
es necesariamente obligatoria en una acción que no está fundada en un contrato o que no ha sido establecida para hacer
valer algún derecho que nace de dicho contrato, o en el que

la materia objeto del documento no se está considerando, y que al resolver el efecto de una manifestación ésta debe ser interpretada en relación con todo el contrato y la parte que alega el obstáculo o impedimento debe haber sido inducido de buena fe al perjuicio. 8 Manresa (1907), 464 *et seq.;* 16 Cyc. 671 *et seq.;* IV Wigmore, sección 2400 *et seq.; Schultz* v. *Ryan* (131 La.) 59 So. 21; *Stackhouse* v. *Zunts,* 23 La. Ann. 481; *Blake* v. *Hall,* 19 La. Ann. 49; *Davis* v. *Binion,* 5 La. Ann. 248; *Hill* v. *Spangenberg,* 4 La. Ann. 553; *Layman* v. *Vicknair,* 47 La. Ann. 679; *Succession of Bellande,* 41 La. Ann. 491; *Westholz* v. *Retaud,* 18 La. Ann. 285; *Tillman* v. *Mosely,* 14 La. Ann. 710.

Muy bien podríamos haber eliminado enteramente la alegación de la apelante en este sentido aplicando la regla general de que una corte de apelación no tomará en consideración aquellas cuestiones que no han sido promovidas debidamente en la corte inferior, pero la apelante ha discutido la cuestión con tanta insistencia y con tal extensión, y se ha permitido hacer tan fuerte crítica de la corte sentenciadora, que nos hemos visto inclinados a discutir la cuestión como ha sido presentada en tanto es necesaria para demostrar que la proposición, tal como ha sido aplicada a los hechos de este caso, es enteramente insostenible.

Los demás errores que han sido alegados se refieren meramente al peso y suficiencia de la prueba y el discutirlos en detalle sería dar demasiado extensión a esta opinión.

Después de examinar cuidadosamente los autos en su totalidad no podemos decir que la corte inferior cometió ningún error manifiesto al llegar a su decisión sobre los méritos del caso en la forma en que fué presentado, y debe confirmarse la sentencia.

*Confirmada la sentencia apelada*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.