ELEUTERIO FELICIE, LUIS CINTRÓN, ANTONIO VILLAMIL, RAFAEL WILKINSON, MIGUEL SOSA y otros, demandantes y apelados, *v.* THE PORTO RICO RACING CORPORATION y JOSÉ JULIÁ, RAFAEL N. VARA, PABLO MARTÍNEZ, JOSÉ FLORES, RAMÓN GARCÍA, JOSÉ S. CESTERO y otros, interventores y apelantes.

No. 4362.—*Visto:* Febrero 16, 1928. *Resuelto:* Junio 27, 1928.

476

*M. A. Martínez Dávila,* abogado de los interventores apelantes; *Diego O. Marrero,* abogado de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Eleuterio Felicie y otros radicaron una demanda en la Corte de Distrito de San Juan sobre cobro de dinero y cumplimiento específico de contrato dirigida contra The Porto Rico Racing Corporation y José Juliá y otros.

Alegaron en resumen, que la demandada Porto Rico Racing Corporation es una corporación organizada de acuerdo con las leyes de esta isla para dedicarse a la explotación de hipódromos y tiene arrendado y opera el hipódromo "Quintana Racing Park", que el 1 de mayo de 1927 celebró en dicho hipódromos seis de las siete carreras que había anunciado en programa oficial, jugándose en relación con ellas un *pool;* que los demandantes celebraron con la corporación demandada "un contrato de apuesta consistente en los cuadros o combinaciones de caballos de los que habían de tomar parte en las carreras que se habían de celebrar en dicho día, según habían sido anunciadas en el programa oficial del referido día de carreras en el cual aparece especificada la distancia en que había de correrse cada una"; que la tercera de dichas carreras se anunció a 950 metros; que los demandantes al hacer sus cuadros hicieron su combinación con arreglo al programa oficial y contando con que los caballos de la tercera carrera habían de correr a 950 metros; que así preparados sus

cuadros pagaron su importe y fueron sellados y entregados al hipódromo; que la indicada tercera carrera no se corrió a 950 metros, sino a 900, distancia a la cual no apostaron los demandantes, resultando vencedor el caballo Brockway al cual el Jurado adjudicó el primer premio y como tal lo declaró válido para la adjudicación del *pool;* que la tercera carrera es inexistente y sólo son válidas las otras seis celebradas de acuerdo con el programa; que el importe del *pool* ascendió a $16,449, de los cuales corresponde a los demandantes $793.05 por cuanto ellos representan tres partes de las cuarenta y dos partes que a razón de $264.35 cobrarían el importe total del *pool* si la corte resolviera que a los efectos del contrato de apuestas celebrado la corporación demandada llevó a efecto sólo seis carreras; que verificado el escrutinio de la caseta del *pool* del hipódromo aparecieron entre los cuadros y papeletas que habían acertado a las seis únicas carreras válidas celebradas las de los demandantes; que los demandantes han estado y están dispuestos a entregar a la corporación demandada el talonario triplicado correspondiente a sus cuadros tan pronto como la corporación entregue a cada uno la suma de $264.35 que les corresponde.

Varias personas pidieron intervenir como demandadas y otras como demandantes y se les dió como tales entrada en el litigio.

La corporación demandada contestó aceptando varios de los hechos alegados en la demanda. Se transcriben a continuación las alegaciones que parecen más importantes. Dicen:

"8:—Alega la demandada que ni niega ni acepta los hechos consignados en la alegación 8 de la demanda, por carecer la demandada de información suficiente si los demandantes combinaron sus cuadros de una manera o de otra, pero acepta que la tercera carrera de las celebradas en dicho día 1 de mayo 1927, fué anunciada a 950 metros en el programa oficial, y niega la demandada por carecer de información suficiente y ser una cuestión de derecho a resolver por

los Tribunales, si la dicha tercera carrera de las celebradas el día 1 de mayo de 1927, es inexistente o no.

"9:—Acepta la demandada la alegación 9 de la demanda pero alega que en la celebración definitiva y salidas de las carreras de caballos que se verifican en su hipódromo la demandada no tiene intervención directa, y sí la tienen los funcionarios de la Comisión Hípica Insular, o la tenían en la fecha de la celebración de la carrera efectuada en 1 de mayo del 1927, y acepta que la dicha tercera carrera antes relacionada fué verificada de acuerdo con el informe del Jurado del hipódromo que explota la demandada, a una distancia de 900 metros, en vez de 950 metros, como estaba anunciada en el programa oficial del Hipódromo.

"10:—La demandada ni acepta ni niega el hecho 10 de la demanda por carecer de suficiente información para ello; y alega, además, la demandada que en la celebración de las carreras no tiene intervención directa ni indirecta, toda vez que desde que el Jurado del Hipódromo toma posesión del Hipódromo a las tres de la tarde del día en que ha de celebrarse carreras, la demandada no tiene autoridad por mandato de la ley, para intervenir en los actos que se ejecutan en dicho Hipódromo, quedando éste bajo la administración absoluta del Jurado y la Comisión Hípica Insular de Puerto Rico."

Alegó además la demandada que otras personas, basándose en haber acertado las siete carreras le habían reclamado el *pool* y que ella había resuelto depositar y depositó en la corte el importe total del dicho *pool*. Los interventores demandados formularon el 7 de mayo de 1927 un escrito de excepciones previas alegando que la demanda no aducía hechos suficientes para constituir una buena causa de acción y que era además ambigua, ininteligible y dudosa, y luego, el 18 del propio mes, formularon su contestación, admitiendo ciertos hechos y negando otros. Parece conveniente transcribir los hechos 8 y 14 de la contestación. Dice:

"8:—Que ni aceptan ni niegan los hechos consignados en la alegación octava de la demanda por carecer los demandantes de suficiente información acerca de si los demandantes combinaron sus cuadros de una manera o de la otra, pero aceptan que la tercera carrera de las celebradas en dicho día primero de mayo de 1927, fué anunciada a 950 metros en el programa oficial, y niegan los demandados por carecer de información suficiente y en una cuestión de

derecho a resolver por los Tribunales si la dicha tercera carrera de las celebradas el día 1 de mayo de 1927 es inexistente o no.

"14:—Aceptan los demandados que los caballos: Cian, Sherman, Reyes Magos, Cheque, Pastora Imperio y Cubilete fueron los ganadores en la primera, segunda, cuarta, quinta, sexta y séptima carreras respectivamente, pero alegan los demandados que el caballo 'Brockway' fué legítimo así como el legal ganador de la tercera carrera.''

También alegaron materia nueva tendente a establecer que entre ellos debe repartirse el *pool* porque ellos acertaron en las siete carreras celebradas, no habiendo tenido ellos intervención alguna en la alteración del programa oficial en cuanto a una.

Así las cosas se presentó el 24 de mayo la siguiente estipulación que fué aprobada por la corte:

"Comparecen las partes en el caso de epígrafe representadas por sus abogados que suscriben y ante la Hon. Corte exponen y solicitan lo siguiente:

"1:—Que por las alegaciones presentadas en este caso, no habiendo controversia en cuanto a los hechos esenciales de la demanda, la Corte tiene solamente ante su consideración una cuestión de derecho para resolver.

"2:—Que dicha cuestión de derecho se contrae solamente como debe interpretarse y cumplirse el contrato de apuestas denominado 'pool.'

"3:—Que en virtud de que las alegaciones no levantan cuestiones de hecho cuya existencia o acaecimiento haya necesidad de probar ante esta Hon. Corte, la única cuestión a resolver por este Hon. Tribunal se limita a determinar si el 'pool' correspondiente a las carreras del día 1 de mayo del 1927 celebradas en el 'Quintana Racing Park' debe adjudicarse tomando en consideración las seis únicas carreras que se celebraron de acuerdo con el contrato de apuestas y con el programa oficial, según alegan los demandantes, o si, por el contrario, debe adjudicarse tomando en consideración las siete carreras que se celebraron y contar como existente y válida la tercera carrera para los efectos del 'pool' según alegan los interventores que se han unido como demandados.

"En virtud de todo lo expuesto anteriormente, las partes solicitan de la Hon. Corte dicte sentencia por el mérito de las alegaciones, concediendo con anterioridad el término que estime conveniente para

la presentación de alegatos en apoyo de las contenciones que cada parte sostiene respecto a la única cuestión de derecho planteada a la consideración de este Hon. Tribunal.''

El 15 de junio siguiente la corte de distrito resolvió el caso a favor de los demandantes. La demandada Porto Rico Racing Corporation no estableció apelación. Los demandados interventores apelaron para antes este tribunal, y en su alegato sostienen que la corte erró al declarar que sólo se habían corrido válidamente seis carreras y al resolver que la demandada Porto Rico Racing Corporation venía obligada a pagar el *pool* a los tenedores triplicados de papeletas que acertaron en dichas seis carreras.

Al discutirse el primer error se sostiene que la corte de distrito actuó sin jurisdicción porque en ninguna parte de la demanda se alega que los demandantes acudieran ante el Jurado a hacer su reclamación y siendo ello así la decisión del Jurado quedó en pie y es inatacable, y porque tampoco se alega que en todo caso se apelara de la dicha decisión del Jurado para ante la Comisión Hípica Insular, no constando por tanto que se hubiera agotado la vía administrativa que es una condición precedente para acudir a los tribunales de justicia.

Estamos enteramente conformes con los apelantes en que la ley y los reglamentos con sujeción a los cuales se celebró el contrato en este caso, forman parte del mismo y en que siendo ello así son aplicables los artículos 19, 20, 21 y 29 del Reglamento de la Comisión Hípica Insular, que, copiados a la letra, en lo pertinente, dicen:

"Artículo 19.—El Jurado es el árbitro de las carreras y hará cumplir estricta y rigurosamente las disposiciones de este reglamento; quedando facultado para imponer penalidades a los que lo infrinjan.

\*     \*     \*     \*     \*     \*     \*

"Artículo 20.—El Jurado es el único Juez de las carreras. Todas las reclamaciones a que éstas pudieran dar lugar, serán presen-

tadas a dicho organismo, por conducto de su Presidente, inmediatamente después de ocurrido el hecho que motiva la reclamación,

"Artículo 21.—Antes de decidir cualquier reclamación, el Jurado puede requerir todos los informes que juzgue necesarios; y dará oportunidad tanto al reclamante como a la persona contra la cual se reclama, para aportar todos los datos que sean necesarios. para el mejor esclarecimiento de los hechos.

"Artículo 29.—Las decisiones del Jurado y Juez de Salida serán apelables para ante la Comisión Hípica Insular excepto en lo que respecta a las salidas y al orden de llegada de los caballos en cada carrera, que serán inapelables."

De acuerdo con esos preceptos reglamentarios, es evidente que los demandantes debieron someter la cuestión al Jurado y apelar de su decisión final en caso de serle adversa para ante la comisión. Sólo después de haber intervenido la Comisión es que los demandantes se hubieran encontrado en condiciones de acudir a los Tribunales de Justicia. Esto es claro y claro es también que esos hechos no se alegan en la demanda.

Pero los demandantes sostienen que tal cuestión no fué planteada por los apelantes en la corte inferior, ni está comprendida en la estipulación y que por lo tanto al suscitarla por vez primera en esta Corte Suprema se pretende variar por completo la teoría del caso, práctica que es contraria a lo resuelto por las cortes del continente en repetidas ocasiones y por esta misma Corte Suprema en *Porto Rico Benevolent Society* v. *Municipio de Ponce,* 28 D.P.R. 825 y *Calderón* v. *Reyes,* 31 D.P.R. 273.

No sólo no la levantaron los apelantes en la corte inferior si que expresamente alegaron en su contestación que la cuestión suscitada sobre la validez de la tercera carrera, "era una de derecho a resolver por los tribunales" y de modo expreso consignaron en la estipulación que "la única cuestión a resolver por este Hon. Tribunal se limita a determinar si el 'pool' correspondiente a las carreras del día 1 de mayo del 1927 celebradas en el 'Quintana Racing Park' debe adjudicarse

tomando en consideración las seis únicas carreras que se celebraron de acuerdo con el contrato de apuestas y con el programa oficial, según alegan los demandantes, o si, por el contrario, debe adjudicarse tomando en consideración las siete carreras que se celebraron y contar como existente y válida la tercera carrera para los efectos del '*pool*' según alegan los interventores que se han unido como demandados.''

Que no puede variarse la teoría del caso en apelación, ha sido repetidamente decidido por este tribunal. Ahora bien, los apelantes alegan que se trata de una cuestión jurisdiccional que puede levantarse en cualquier estado del procedimiento. Tendrían razón si se tratara de una verdadera cuestión fundamental de jurisdicción que fuera a la raíz de la facultad de la corte para conocer del litigio. Por ejemplo, si se hubiera seguido en la corte de distrito un procedimiento de quiebra y nada se hubiera objetado. Apelado el caso a la Corte Suprema, cualquier interesado podría sostener que el procedimiento era nulo por falta de jurisdicción. La misma corte, por su propio acuerdo, llegaría a tal conclusión.

Pero aquí la corte tenía facultad para conocer del asunto y la falta de jurisdicción se basa únicamente en que se dejó de alegar en la demanda el cumplimiento de ciertos requisitos previos y la presunción es que cuando no se hizo la objeción en la corte de distrito es porque se aceptó dicho cumplimiento. Si la objeción hubiera sido levantada, la parte demandante hubiera tenido oportunidad de enmendar su demanda.

En un caso semejante la Corte Suprema de Iowa dijo:

''En el segundo de los dos casos bajo nuestra consideración la corte inferior concedió una sentencia al demandante en contra del condado de Polk por contribuciones sobre la valoración en exceso de $310. Se insiste aquí por los apelantes, que nunca se presentó reclamación alguna al board de supervisores, y que éste era un requisito necesario para el derecho de mantener una acción contra el condado. El caso de Bibbins vs. Clark, 90 Iowa 230, N. W. 884 y 59 N. W. 290, y los casos allí citados sostienen esta reclamación. Sin embargo, nosotros no creemos que tal defensa pueda ser soste-

nida en este caso, por la razón de que la cuestión es presentada por primera vez en esta corte; y nosotros podemos decir lo mismo de la objeción apuntada respecto a que la asignación al demandante de la causa de acción no ha sido demostrada. Cuestiones de esta clase, si no se levantan en tiempo y en debida forma, se considerarán abandonadas. Reed vs. City of Muscatine, 104 Iowa 183, 73 N. W. 579, y los casos citados." *Smith* vs. *McQuiston,* 79 N. W. 130, 132.

Parece conveniente agregar que la corte de distrito en su opinión, dijo:

"No se alega en la demanda, ni se dice en la contestación, por qué se celebró la 3ra. carrera a 900 metros, cuando estaba anunciada en el programa oficial a 950 metros; pero de una certificación acompañada al alegato de los interventores, expedida por la Comisión Hípica Insular, se desprende que fué por un error involuntario y que la Comisión confirmó la resolución del Jurado, dando validez a la carrera como si hubiera sido a 950 metros, en ausencia de fraude o de alguna otra circunstancia anormal."

Y que esta Corte Suprema, en el caso de *Hernández et al.* v. *Hernández et al.,* 31 D.P.R. 678, resolvió:

"En general cuando los autos revelan que las partes han trabado contienda litigiosa sobre hechos y que la parte opositora ha procedido en el juicio como si las cuestiones hubieran sido debidamente levantadas por las alegaciones, el Tribunal Supremo no insistirá en la existencia de alegaciones, ya en la demanda o en la contestación. Sin embargo, cuando no hay ninguna indicación de consentimiento por la parte contraria o un impedimento contra ella (*estoppel*), no puede un apelante levantar por primera vez cuestiones en apelación que debió haber presentado en las alegaciones."

■■ Al discutir el segundo error los apelantes sostienen que no se puede exigir a la demandada The Porto Rico Racing Corporation el cumplimiento específico del contrato de apuesta de que se trata porque la corporación demandada nada tuvo que ver con la variación de la distancia en la tercera carrera.

Es cierto que la dicha corporación alegó que no había tenido intervención directa ni indirectamente en la dicha alteración, toda vez que desde que el Jurado del Hipódromo

toma posesión del mismo a las tres de la tarde del día en que se celebren las carreras la demandada no tenía autoridad por mandato de ley para intervenir en los actos que se ejecuten en dicho Hipódromo, quedando éste bajo la administración absoluta del Jurado y la Comisión Hípica Insular; pero también es cierto que es la corporación demandada la que, finalmente debe, satisfacer las cantidades correspondientes a los que acierten en el juego.

Siendo esto así, la cuestión no tiene la importancia que le atribuyen los apelantes.

Aquí podríamos terminar confirmando la sentencia recurrida, ya que en verdad los apelantes no impugnan la resolución de la corte en sus méritos y es que en realidad de verdad reconocido el poder de la corte para intervenir y decidir la contienda se impone la conclusión de que la decidió de acuerdo con los hechos y la ley.

Se trata de un contrato de apuesta que produce efectos legales según el artículo 1703 del Código Civil. Dicho contrato ha sido definido por el artículo 115 del Reglamento de la Comisión Hípica como consistente en acertar el mayor número de caballos que resulten vencedores y que aparezcan en las papeletas y cuadros de combinaciones escritas depositadas en las urnas oficiales.

La demandada Porto Rico Racing Corporation por razón de dicho contrato venía obligada con las personas que depositaron sus cuadros y papeletas en las urnas oficiales y pagaron su importe a que se celebrara la tercera carrera a la distancia de 950 metros, como apareció anunciado en el programa oficial. Se celebró a 900 metros. El contrato quedó claramente alterado. ¿Constituye dicha alteración un verdadero incumplimiento del mismo? El artículo 57 del Reglamento de la Comisión Hípica Insular determina que no podrá hacerse ninguna alteración a los términos de inscripción para las carreras después de anunciadas excepto en cuanto se refiere al cambio de *jockeys* y el 58 que el juez de inscripción

debe cuidar al hacer imprimir el programa oficial que se consignen entre otros datos los nombres de los caballos y las distancias, y si resultare un error involuntario en el programa después de publicado, el juez de inscripciones debe subsanarlo haciéndolo constar antes de las once A. M. del día de las carreras en la pizarra del *pool* o sea a la vista del público antes de comenzarse el sellado de los cuadros y papeletas y de realizarse el contrato de apuestas, lo que no se hizo en este caso.

Se ve, pues, que no se trata de un requisito sin importancia. A él se refiere expresamente el Reglamento. La distancia es un factor importante que se tiene en cuenta al elegir los caballos de acuerdo con la resistencia de cada uno. La alteración anula la carrera.

Siendo ello así, estuvo enteramente justificada la corte de distrito y *debe confirmarse la sentencia que dictara.*