Juan José Torres, demandante y apelado, *v.* Porto Rico Racing Corporation y Andrés Salazar, demandados y apelante la primera.

No. 4698.—*Sometido:* Mayo 3, 1929—*Resuelto:* Enero 21, 1930.

*A. Díaz Viera* y *Manuel A. Martínez,* abogados de la apelante; *Leopoldo Tormes* y *F. M. Toro,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La Porto Rico Racing Corporation apela de una sentencia por daños y perjuicios resultantes del quebrantamiento de un contrato debido a negligencia. La apelante se dedica al negocio hípico y sostiene un hipódromo con ese fin.

El contrato en cuestión consistía de una papeleta o combinación preparada por Juan José Torres en un impreso suministrado por la demandada y que ella aceptó al serle devuelto por Torres, para los fines y bajo las condiciones 'que más adelante se expondrán. La combinación o lista de nombres de caballos elegidos por Torres iba precedida de un párrafo impreso, que él firmó, en que solicitaba de la demandada o de su agente debidamente autorizado—Andrés Salazar—que enviara la combinación para ser jugada en el *pool* del Hipódromo Quintana, con sujeción a las condiciones enumeradas al dorso de la papeleta. En el párrafo impreso suscrito por Torres se dice que estas condiciones habían sido leídas cuidadosamente por él. La duodécima de las mismas lee como sigue:

"12. Las combinaciones serán enviadas por mediación de la Porto Rican Express Company o en automóvil, y en caso que no llegasen a tiempo a manos del Administrador del Pool para ser selladas, 'será devuelta la cantidad especificada en la misma, no habiendo derecho a más ninguna otra reclamación."

El Hipódromo Quintana está ubicado en Río Piedras. Era costumbre del agente en Ponce, Salazar, asistir personalmente a las carreras y llevar consigo las combinaciones recibidas de su clientela en Ponce. Al llegar al hipódromo era su costumbre transcribir estas combinaciones en otros impresos oficiales antes de presentarlas para ser selladas.

En la mañana del día en que la combinación del demandante iba a ser transcrita y presentada con el fin de sellarla para convertirla en una papeleta del *pool*, Salazar llegó al hipódromo con tiempo amplio para atender el asunto. En vez de hacer eso en seguida, se fué a visitar ciertas cuadras, y como resultado de esa tardanza la combinación del demandante no fué transcrita ni sellada. De lo contrario, le hubiese ganado un premio ascendente a más de doce mil dólares.

Las condiciones impresas al dorso del contrato fueron

redactadas por la corporación. Es ley familiar, según se expresa en 13 C. J. 544, sección 516, que:

"Cuando un contrato es ambiguo, será interpretado más fuertemente contra la parte que lo preparó o que utilizó las palabras que dieron lugar a la duda. El fundamento de esta regla es el de que un hombre es responsable de las ambigüedades de sus propias expresiones y no tiene derecho alguno a inducir a otro a contratar con él bajo la suposición de que sus palabras quieren decir una cosa, mientras que espera que la corte adopte una interpretación por virtud de la cual significarían otra cosa que lo beneficie más . . . Desde luego, las reglas anteriormente expuestas son aplicables peculiarmente cuando un contrato consta en un impreso preparado por una de las partes."

Véase además la sección 1255 del Código Civil.

La estipulación y renuncia contenidas en la última parte de la duodécima cláusula, *supra*, no pueden separarse del contexto e interpretarse aisladamente.

El pensamiento predominante en la mente de las partes fué la posibilidad de una demora en el tránsito y la consiguiente imposibilidad física de transcribir las combinaciones procedentes de Ponce después de la llegada al hipódromo y antes de que se cerrara el *pool*. Fué con el fin de resguardarse de esta posibilidad, y con ningún otro, que la corporación, al preparar su impreso, estipuló que si la papeleta no llegaba a manos del administrador del *pool* a tiempo para ser sellada, su precio sería devuelto al apostador sin ulterior responsabilidad de parte de la corporación.

La transcripción de la papeleta provisional en otros impresos oficiales en blanco (sólo obtenibles en el hipódromo) era una condición previa al acto de sellarla. Al aceptar la corporación la papeleta en forma provisional, asumió la obligación de convertirla en una papeleta del *pool*. El apostador que pagó su papeleta en Ponce no tenía motivo alguno para suponer que la corporación intentaba evadir esa obligación rehuyendo toda responsabilidad por la negligencia de sus agentes o empleados a este respecto, de acuerdo con los

términos de la duodécima cláusula. Si tal fué la intención de la corporación al tiempo de redactar el impreso, hubiérale sido completamente fácil decirlo en lenguaje claro e inequívoco. Inmiscuir en el contrato ante nos semejante intención, siguiendo la letra de la duodécima cláusula y pasando por alto todo lo demás, sería (parafraseando a Corpus Juris, *supra*) permitir que la corporación induzca a sus clientes a contratar con ella bajo la suposición de que sus palabras quieren decir una cosa, mientras que espera que la corte adopte una interpretación por virtud de la cual significarían otra cosa que la beneficie más.

Resolvemos, por consiguiente, que a tenor del significado de la cláusula duodécima, la papeleta de que se trata llegó a poder del administrador del *pool* a tiempo de ser sellada, por haber llegado al hipódromo bajo la custodia del agente de la demandada con tiempo amplio para ser transcrita por él o por otros agentes o empleados de la corporación, de acuerdo con los términos del contrato, y para ser presentada con el fin de sellarla y depositarla en el *pool*.

 La corte de distrito admitió como prueba una carta escrita por el secretario-tesorero de la corporación y suscrita por él como gerente. Se señala como error la admisión de esta carta. La carta fué escrita en respuesta a una indagación hecha por un ciudadano de Ponce, y decía que Andrés Salazar era el agente de la corporación en esa ciudad. El argumento parece ser que ese funcionario de la corporación que firmaba como gerente no era tal, que las admisiones de un gerente no obligarían a la corporación a menos que fuesen hechas en cumplimiento de sus deberes como tal, y que la mejor prueba respecto a la existencia de una agencia en Ponce hubiese sido copia certificada de una resolución de la junta de directores, o la manifestación del secretario de la corporación, o una copia certificada expedida por la oficina de la Comisión Hípica Insular. Las únicas autoridades citadas son 14 C. J. 849, sec. 1291; íd. 920, sec. 1435; 3 L.R.A.

(N. S.) 551; y 7 R.C.L. 660, 661, sec. 662. Ninguna de estas autoridades llega al extremo de decir que una corporación puede repudiar las manifestaciones hechas por su secretario en respuesta a una indagación dirigida a la corporación, meramente porque el secretario firmó como gerente y no como secretario. Mucho menos sostienen que una corporación puede evadir toda responsabilidad en cuanto a una agencia así acreditada por su secretario después de haber recibido los beneficios derivados de tal agencia como resultado de haberlo así asegurado al público.

Cuando la carta fué ofrecida como prueba los únicos fundamentos de objeción fueron que la persona que escribió la misma si bien admitía haber escrito la carta, había manifestado en una deposición que no era el tesorero de la corporación demandada; que la carta fué escrita a un tercero que no era parte en el litigio; y que el documento no había sido identificado debidamente. La segunda y tercera de estas objeciones han sido abandonadas y la cuestión relativa a cuál hubiese sido mejor prueba con relación a la existencia de una agencia en Ponce no puede suscitarse por primera vez en apelación.

■ Otra contención es que la corte de distrito cometió error al declarar que Andrés Salazar era agente de la corporación demandada. La carta aludida no fué la única prueba tendiente a establecer la relación de agente y principal. La prueba *aliunde* fué amplia. Aun si la corte inferior hubiese cometido error al admitir la carta en evidencia, o aun si esa carta nunca se hubiese escrito, no podría haber vacilación alguna en cuanto a la confirmación de la sentencia. De todos modos, y dejando a un lado cualquier cuestión de la agencia en sí, bastaba (según indicó el juez sentenciador en su relación del caso y opinión) que Salazar hubiera sido investido con autoridad aparente y tenido para con el público por la corporación como su agente.

■ La apelante también se queja de la admisión en

cvidencia de una circular impresa por no ser la mejor prueba y porque no se demostró que la corporación demandada tuviera conexión alguna con la misma. Sólo el primero de estos dos fundamentos fué sugerido durante la vista del caso y la objeción fué debidamente declarada sin lugar por la razón de que el impresor que identificó la circular ya había declarado respecto a la destrucción del original.

■ La única objeción aducida en la corte inferior a la admisión de cierta declaración dada por un testigo llamado Domingo Quevedo, Jr., se basaba en que la misma era impertinente. No era impertinente, mas si lo hubiese sido, el error al desestimar la objeción no podría suscitarse con éxito en apelación, toda vez que no se anotó excepción alguna al anunciar el juez sentenciador que la prueba sería admitida con la condición de que más tarde sería eliminada si resultara impertinente. Convenimos muy bien con la apelante en que las objeciones a la admisión de prueba deben ser resueltas definitivamente al ser levantadas y que la admisión tentativa de prueba objetable contra la protesta de una de las partes no es el procedimiento adecuado, pero aquí no hubo protesta alguna.

■ Otras cuestiones relativas a la suficiencia de la demanda y de la prueba en tanto en cuanto no hubiesen sido ya resueltas no requieren una extensa discusión. La más seria de estas contenciones fué la cuestión primeramente discutida y resuelta. Sin embargo, la cuestión en que más hincapié hace la apelante es que el contrato definido en la demanda y más arriba reseñado era un contrato de juego de azar.

La demandada no explotaba un *pool* "o el sistema conocido por *pari mutuel*," dentro del significado de los artículos 38 y 39 de la Ley Hípica, aprobada el 4 de mayo de 1927, Leyes de ese año, páginas 207, 225. El cuadro en cuestión nunca fué "sellado o inscrito" dentro del significado

del artículo 40 de dicha ley sino que debía sellarse e inscribirse después de haberse transcrito y preparado debidamente para ese fin por la demandada. El papel entregado a Torres no era el "billete, participación o interés, o ningún papel o billete en forma de tarjeta que se presume ser o represente *pari mutuel*, o cualquier combinación que dependa del resultado de cualquier carrera o carreras de caballos," a que se refiere el artículo 44. La demandada no "abrió, estableció o conservó" en Ponce ninguna "oficina o sitio para la preparación de billetes o listas, cuadros o papeletas *que se presumen ser o representar cualquier participación o interés* en cualquier *pool,* banca alemana o combinación que dependa del resultado de cualquier carrera o carreras de caballos," dentro de la prohibición del artículo 46. Lo que la corporación se comprometió a hacer fué suministrar tal papeleta o combinación después de haber sido preparada por dicha corporación al llegar oportunamente los documentos provisionales o contratos ejecutorios celebrados en Ponce. De todos modos, si el contrato que tenemos ante nos pudiera ser interpretado como la venta de la papeleta o cuadro previstos por el artículo 46, no había presunción alguna, y Torres no tenía motivo para asumir que la corporación hípica había abierto la oficina de Ponce sin la aprobación de la Comisión Hípica, y, por tanto, en violación de las disposiciones contenidas en dicho artículo 46. La falta de tal aprobación, de haber sido alegada por la demandada, tal vez podía ser o no un fundamento legítimo de defensa, pero al demandante no incumbía alegar o probar como parte de su causa de acción que la demandada había obtenido la aprobación expresa de la Comisión Hípica como condición precedente a la apertura de la oficina de Ponce.

*La sentencia apelada debe ser confirmada.*