JUANA SEGUNDA LATORRE, demandante y apelante, *v.* GASPAR CRUZ TEXIDOR y la SUCESIÓN DE EPIFANIO VIZCARRONDO, demandados y apelados.

Núm. 9461.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Noviembre 21, 1947.

*Diego Guerrero Noble* y *Carlos D. Vázquez,* abogados del apelante; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

De la sentencia declarando sin lugar la demanda, dictada por la Corte de Distrito de San Juan con fecha 4 de diciembre de 1945, apela la parte demandante para ante este Tribunal. En apoyo de su recurso sostiene en su alegato que: (1) "la Corte de Distrito cometió error manifiesto al sostener que el traspaso a favor de Gaspar Cruz Texidor era válido a pesar de que no existió consideración alguna, aplicando indebidamente el artículo 1228 del Código Civil; (2) erró la Corte de Distrito al sostener que la demandante estaba impedida de impugnar el contrato de servicios profesionales celebrado con el abogado García Mújica por estar en *pari delicto* con éste y por haberse ejecutado el contrato;" y "(3) erró la Corte de Distrito al dictar una sentencia que es contraria a derecho y a la prueba practicada."

La demanda radicada es una en la cual se alega que la demandante es dueña de las dos fincas que describe bajo las letras A y B y de la mitad de la que describe bajo la letra C, y que los demandados, confabulándose entre sí, valiéndose del engaño y aprovechándose de la ignorancia de ella, la hicieron comparecer ante el notario de Carolina, don Ramón García Mújica, a firmar la escritura núm. 102 del protocolo de dicho notario, por virtud de la cual aparece ella vendiendo las dos y media fincas descritas al demandado Gaspar Cruz Texidor, por la suma total de $1,000, habiendo ella confesado en la escritura haber recibido el precio de la venta de manos del supuesto comprador con anterioridad al otorgamiento de la referida escritura; que asimismo, a virtud de ésta y valiéndose igualmente los demandados de la misma conspiración y engaño, hicieron aparecer a la demandante confiriendo

autoridad al demandado Epifanio Vizcarrondo[1] para cobrar las rentas de las casas descritas con la letra C y para aplicarlas al pago de una sentencia que se dice haber sido dictada por la Corte Municipal de Carolina; que todos los convenios y estipulaciones contenidos en la referida escritura son absolutamente falsos, simulados e inexistentes, por no ser el resultado de la voluntad espontánea de la demandante, no haber prestado ella su consentimiento en forma alguna para la venta de dichas propiedades a favor de Gaspar Cruz Texidor ni para la autorización al demandado Vizcarrondo para el cobro de las rentas que anteriormente se mencionan, y por no haber mediado consideración alguna para los referidos convenios y estipulaciones, no habiendo el demandado Gaspar Cruz Texidor pagado en ningún momento a la demandante el precio simulado en dicha escritura y teniendo las fincas aparentemente vendidas un valor mucho mayor que el consignado en la referida escritura.

Como segunda causa de acción la demandante reproduce las alegaciones que anteceden y alega que desde diciembre de 1940 los demandados ilegalmente y sin título alguno para ello se han posesionado de las tres fincas descritas, cobrando sus rentas y apoderándose de todos los frutos producidos por las mismas. La demanda termina solicitando que: (a) se declare inexistente y nula la referida escritura otorgada ante el notario García Mújica y cualquier inscripción que se hubiere verificado de ella en el Registro de la Propiedad; (b) se ordene a los demandados que entreguen a la demandante la posesión de los inmuebles descritos en la demanda; (c) se condene a los demandados solidariamente a pagar a la demandante las rentas producidas por dichos inmuebles, con costas, gastos y honorarios de abogados, y (d) concediendo a la demandante cualquier otro remedio que sea compatible con las alegaciones de la demanda y la prueba que se practique.

---

[1] Vizcarrondo falleció y por orden de 15 de enero de 1946 la Corte de Distrito sustituyó a su Sucesión por éste.

Contestaron los demandados oportunamente, negando las alegaciones esenciales de la demanda y haciendo algunas aseveraciones en contrario.

El pleito fué a juicio y durante el mismo las partes produjeron amplia prueba testifical y documental. La misma puede sintetizarse así: Don Enrique Latorre falleció ab intestato en el pueblo de Carolina allá para el mes de septiembre de 1937. Sus hermanos Cristino, Quintín y Josefa Latorre se hicieron cargo inmediatamente del caudal hereditario. La demandante Juana Segunda Latorre, quien para aquella época residía en Lares, considerándose hija natural del finado vino a Carolina y celebró allí con el Lic. Ramón García Mújica un contrato sobre prestación de servicios, a virtud del cual éste se comprometía a representarla en el pleito de filiación a entablarse, a tramitar la consiguiente declaratoria de herederos y a pagar todos los gastos que dichos litigios ocasionaren. La demandante, por su parte, convino en pagar a dicho abogado el 50 por ciento de cualquier suma que finalmente se obtuviera con motivo de esos pleitos y a no transigirlos sin autorización de éste.

Presentóse la correspondiente demanda de filiación y celebróse el juicio de rigor. Antes de que se dictara sentencia en el mismo el Lic. García Mújica cedió por escrito al causante de la Sucesión Vizcarrondo todos sus derechos y acciones en el referido contrato sobre prestación de servicios por la suma de $450. El pleito de filiación, que hasta entonces estaba pendiente de sentencia, fué fallado poco después a virtud de una estipulación suscrita por las partes, en la cual los demandados aceptaron que la demandante era hija natural de su finado hermano.[2] Se dictó la correspondiente sentencia y se tramitó entonces la declaratoria de herederos. Luego de celebrar la demandante y Vizcarrondo extensas conferencias respecto al valor de los bienes de la herencia y sobre la forma en que debía pagarse la participación de éste, se acordó designar a Andrés Carmona, Margaro Viana y Daniel Mújica, co-

[2] Véase el artículo 1715 del Código Civil, Ed. 1911, artículo 1713, Ed. 1930.

merciantes de Carolina, para que procedieran a tasar las pro-
piedades de ·la herencia. Así lo hicieron. Entonces la
demandante y Vizcarrondo se trasladaron a San Juan, donde
aquélla otorgó ante el Lic. Francisco Fernández Cuyar cua-
tro pagarés hipotecarios al portador por la suma de $1.000
cada uno, garantizados con cuatro de las fincas de la herencia.
También convinieron Juana Segunda Latorre y Vizcarrondo
en que, a fin de hacer efectiva una sentencia obtenida ante la
Corte Municipal de Carolina por Daniel Mújica contra ellos,
Vizcarrondo cobraría las rentas de la propiedad descrita en
la demanda con la letra C por el tiempo que fuera necesario,
hasta pagar la deuda:

En este estado de cosas, en 22 de diciembre de 1940 com-
parecieron los aquí litigantes ante el notario Ramón García
Mújica y otorgaron dos escrituras, la primera de ellas bajo
el número 101 sobre cancelación de obligaciones hipotecarias,
y la segunda, bajo el número 102, sobre compraventa. Du-
rante el otorgamiento de ambas la demandante Juana Segunda
Latorre estuvo acompañada de su esposo Salomé Quiles y de
su abogado, Lic. Benicio Sánchez Castaño. Los demandados
Epifanio Vizcarrondo y Gaspar Cruz Texidor también se ha-
llaban presentes, al igual que los testigos, el notario y otras
personas. Las dos escrituras fueron leídas por el Lic. Sán-
chez Castaño, quien informó a la demandante que las mismas
estaban en orden y que ella podía firmarlas, siendo entonces
éstas leídas en alta voz por el notario García Mújica a otor-
gantes y testigos, por haber renunciado todos ese derecho,
del cual les advirtió.

A fin de apreciar mejor el alcance de su testimonio, oiga-
mos a la propia demandante:

"P—Su nombre.
"R—Juana Segunda Latorre.

. . . . . .

"P—Al morir su papá, ¿qué intervención tuvo el Sr. Vizcarrondo?
"R—Al morir mi papá entonces el Sr. Vizcarrondo fué y me
llevó al bufete de García Mújica y entonces allí hicimos un contrato

para un pleito para declaratoria de herederos porque yo era hija bastarda e hicieron el negocio conmigo de ellos hacer todos los gastos de notario, de todo, todo, por la mitad y entregándome a mí la mitad limpia.

"P—¿Ud. recuerda cuántas propiedades había envueltas?

"R—Cinco casas y dos habitaciones de otra propiedad.

"P—¿En el contrato que hizo Ud. con García Mújica para pagarle del valor de las propiedades, eso Ud. no lo ha pagado en ninguna forma?
"R—No, señor.

"P—¿Ud. reclama dos propiedades y la mitad de otra de las seis?
"R—Sí, señor.
"P—¿Ud. no hace reclamación por las otras tres y la otra mitad?
"R—No, porque tres las tengo yo.
"P—¿Ud. recuerda si su padre le debía a Daniel Mújica alguna cantidad?
"R—Me dijeron que él le debía $300.
"P—¿Ud. hizo algo para pagar esa deuda?
"R—Un pagaré por $300.
"P—¿Ud. ha pagado esa deuda de su padre?
"R—No, señor.

"P—¿De las tres casas y media que Ud. tiene él (Vizcarrondo) no ha cogido las rentas?
"R—Imposible.
"P—¿El solamente ha cogido las rentas de las dos casas y media que Ud. reclama ahora?
"R—Sí, señor.

"P—¿Cuando García Mújica leyó la escritura, Ud. la firmó ese día?
"R—Sí, cuando Epifanio Vizcarrondo fué a buscarme para firmar la escritura.

"P—¿El Ledo. Sánchez Castaño leyó la escritura?
"R—Sí, señor.

"P—¿Los pagarés que se cancelaron allí de qué eran?

"R—Yo no sé, porque Epifanio Vizcarrondo me dijo que me iba a hacer un papel para que yo tuviera asegurado de lo mío, para que no hubiera heredero que me lo quitara y entonces me dijo: Tú vas al bufete de Celestino Iriarte para que allí te hagan ese papel. Entonces yo fuí y él fué.

"P—¿Qué notario otorgó esa escritura?

"R—No sé.

"P—¿Ud. no firmó ante mí (contrainterrogaba el Lcdo. Francisco Fernández Cuyar)?

"Sí, señor.

"P—¿Los pagarés cancelados por esa escritura Ud. no los tenía?

"R—No, señor.

"P—¿No se los dió Ud. al notario García Mújica?

"R—Yo no los tenía. Quien se los entregó fué el Sr. Epifanio Vizcarrondo. Yo nunca he tenido esos pagarés en mis manos.

"P—¿En una escritura en que cancelaba los pagarés el Sr. Epifanio Vizcarrondo le entregó al Sr. García Mújica los pagarés para que los cancelara?

"R—Sí, señor.

"P—¿A Ud. se los entregaron allí después de cancelados los pagarés?

"R—Sí, señor.

"Sr. Juez—P—¿Cuántos eran los bienes que Ud. tenía que reclamar como herencia de su padre?

"R—Cinco casas y dos habitaciones en otra casa más.

"P—¿Él (Vizcarrondo) tiene dos casas de él solo y la mitad de la casa del horno? ¿Ése es el arreglo?

"R—Ése es el arreglo de él.

Si bien es cierto que en la escritura número 101 sobre cancelación de obligación hipotecaria se hace constar que la compareciente Juana Segunda Latorre era la tenedora y poseedora de los cuatro pagarés por $1,000 en ella descritos y que ella nunca había endosado ni transferido los mismos a per-

sona o entidad alguna, la propia declaración de la demandante y los autos en su totalidad demuestran que dichos pagarés fueron otorgados y entregados por ella a Vizcarrondo con el propósito de garantizar la participación que a éste correspondía, de conformidad con el contrato de servicios originalmente celebrado entre la demandante y el Lic. García Mújica y que esos pagarés estaban en poder de Vizcarrondo al momento de otorgarse tanto la escritura sobre cancelación de pagarés como la núm. 102, impugnada en la demanda.

Por otra parte, es igualmente cierto, que si bien en la escritura de compraventa se hace constar que el adquirente de las propiedades en ella descritas lo fué el demandado Gaspar Cruz Texidor y que éste pagó $500 por la finca descrita bajo la letra A, $100 por la descrita bajo la letra B y $400 por la descrita bajo la letra C, la prueba demuestra, no obstante, de manera inconcusa que Gaspar Cruz Texidor fué un mero testaferro de Vizcarrondo y que la escritura número 102 se otorgó realmente como consecuencia directa de la entrega y cancelación de los cuatro pagarés hipotecarios a que se hace referencia en la número 101 de igual fecha.

En relación con las rentas de la propiedad descrita bajo la letra C, en la escritura número 102 también se hace constar que ellas serían aplicadas en su totalidad al pago de una sentencia dictada por la Corte Municipal de Carolina en un pleito en cobro de pagaré suscrito por Juana Segunda Latorre y Epifanio Vizcarrondo, confiriendo ella a éste autorización para cobrar dichos cánones y aplicar los mismos al pago de esa sentencia, previo el otorgamiento de los correspondientes resguardos. La prueba demostró sin embargo, que ésa fué una realidad y que si bien Vizcarrondo cobraba tales rentas lo hacía en cumplimiento de un acuerdo celebrado entre la demandante y él. Bajo esas condiciones era enteramente razonable que así se hiciera constar en la escritura.

El demandado Gaspar Cruz Texidor admitió no haber pagado cantidad alguna por las propiedades que se le trasmitieron, ni estar en posesión de éstas. Pero según ya hemos

dicho, la prueba demostró que el traspaso se hizo en consideración a la entrega y cancelación de los cuatro pagarés hipotecarios, por $1,000 cada uno, otorgados por la demandante a favor de Epifanio Vizcarrondo. Nada había que impidiera que Vizcarrondo cediera al demandado Cruz Texidor su participación o interés en el contrato de servicios originalmente celebrado entre la demandante y García Mújica. En realidad, Vizcarrondo no trasmitió a Cruz Texidor participación o interés algunos en el contrato de servicios. Esa participación o interés ya le habían sido satisfechos por la demandante a Vizcarrondo mediante el otorgamiento de los cuatro pagarés de referencia. Lo que sí trasmitió Vizcarrondo a su codemandado Cruz Texidor fueron los cuatro pagarés al portador, y esto, naturalmente, podía hacerlo. Es posible que los pagarés no pasaran físicamente de manos de Vizcarrondo a manos de Cruz Texidor, pero subsiste el hecho incontrovertido de que la escritura a favor de Cruz Texidor se otorgó como secuela de la cancelación de los pagarés. ¿Qué motivos pudo tener Vizcarrondo para que las propiedades garantizadas hipotecariamente por los pagarés no se le trasmitieran a él? Los autos se ocupan de decirnos que ello se debió al hecho de que para aquel entonces existían desavenencias entre Vizcarrondo y su esposa y que él no deseaba adquirir bienes en los cuales posiblemente ella tuviera participación. No importa cuán poco loable fuera el proceder de Vizcarrondo al así actuar, él indudablemente podía transferir los pagarés a Cruz Texidor y éste, repetimos, no fué otra cosa que un testaferro de Vizcarrondo al comparecer como adquirente de las propiedades en la escritura número 102. Al otorgarse ésta hubo sin duda una simulación. Empero el artículo 1228 del Código Civil, Ed. 1930, provee que "La expresión de una causa falsa en los contratos dará lugar a la nulidad, si no se probase que estaban fundados en otra verdadera y lícita." La simulación fué clara, pero el contrato de compraventa estuvo fundado en una causa verdadera y lícita. No se cometió el primer error señalado.

 No es menester que resolvamos si el contrato celebrado entre la demandante y el abogado García Mújica era o no válido, como tampoco si la demandante y él estaban en *pari delicto,* ya que no son ésos los fundamentos de la demanda. Ésta, conforme se ha visto, está fundada exclusivamente en la nulidad de la escritura número 102. Es verdad que en su opinión la corte *a quo* discute con amplitud el contrato de servicios celebrado y llega a la conclusión de que los contratantes estaban en *pari delicto.* Sin embargo, aun admitiendo a los fines de esta opinión que al así resolver ella estuvo equivocada, la apelación se da contra la sentencia misma y no contra los fundamentos de la opinión. *Bianchi Martínez* v. *Sucn. Bianchi,* 67 D.P.R. 594, 601; *Escudero* v. *Mulero,* 63 D.P.R. 574, 588 y *Cruz* v. *Carrasquillo,* 61 D.P.R. 435. Y ha sido doctrina inalterada de este Tribunal que un apelante no puede variar en apelación la teoría de su caso y de que si así lo hace su recurso o el señalamiento correspondiente serán desestimados: *Madera & Hno. Inc.* v. *Solares & Co., S. en C.,* 43 D.P.R. 138; *Viñas* v. *Waterman (J.S.) & Co.,* 43 D.P.R. 951; *Serra, Garabís & Co. Inc.* v. *Municipio,* 42 D.P.R. 468; *Felicie* v. *Porto Rico Racing Corp.,* 38 D.P.R. 475; *García* v. *Díaz,* 33 D.P.R. 101; *Cortijo* v. *Rosario,* 33 D.P.R. 431; *Calderón* v. *Reyes,* 31 D.P.R. 273; *P. R. Benevolent Society* v. *Mun. de Ponce et al.,* 28 D.P.R. 824; *Figueroa* v. *Figueroa et al.,* 23 D.P.R. 438; *Sucesión Orcasitas* v. *Sucesión Orcasitas,* 21 D.P.R. 113; *Coto* v. *Rafas et al.,* 18 D.P.R. 508; y *Montilla* v. *Van Syckel et al.,* 8 D.P.R. 160

 Conforme indicamos, la Corte inferior dictó sentencia declarando sin lugar la demanda en todas sus partes. Sus conclusiones de hecho están sostenidas por la prueba, y una lectura cuidadosa de ésta no nos convence de que ella cometiera manifiesto error en la apreciación de la misma o actuara movida por pasión, prejuicio o parcialidad. No debemos, por ende, alterar sus conclusiones. *Pueblo* v. *Santos,* 67 D.P.R. 650; *Ramos* v. *Rosario,* 67 D.P.R. 683, 690 y casos citados.

*Debe confirmarse la sentencia apelada.*