PEDRO DÍAZ, demandante y recurrente, *v.* HIPÓDROMO EL COMANDANTE y JOSÉ DÍAZ BURGOS, ETC., demandados y recurridos.

*Número:* 568  *Resuelto:* 21 de marzo de 1963

810

*Francisco González, Jr.,* y *Julio C. Rivera,* abogados del recurrente; *Córdova & Cebollero* y *Jorge L. Córdova, Jr.,* abogados de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 8 de agosto de 1960 el recurrente Pedro Díaz incoó una acción civil que intituló sobre daños y perjuicios dirigida contra el Hipódromo El Comandante[1] y José Díaz Burgos, un agente hípico de Yabucoa. En dicha demanda, luego de alegar que Díaz Burgos era un agente autorizado para vender cuadros y papeletas para las jugadas de *"pool"* que auspicia la empresa operadora del hipódromo, se expuso que el día 21 de julio de 1960 el demandante había jugado dos papeletas numeradas P–5357569 y 5357570 para las carreras de caballos que se celebrarían al siguiente día; que

---

[1] En las alegaciones formuladas luego de ser emplazada, la parte demandada incluida con el nombre de Hipódromo El Comandante compareció como San Juan Racing Association, Inc., y así lo hizo constar expresamente en la moción de desestimación que dio margen a la sentencia que es objeto de revisión.

el día 22, cerca de la 1:45 p.m., el agente Díaz Burgos se trasladó a las oficinas del hipódromo con las combinaciones jugadas en su agencia entre las cuales se encontraban las papeletas ya identificadas; que dicho agente entregó todos los cuadros y papeletas a un empleado de la empresa encargado de "sellar" las combinaciones; que a Díaz Burgos le fue entregada una hoja de cotejo y "no le fue devuelto al señor José Díaz Burgos ni tampoco al demandante sin sellar las referidas papeletas", ni tampoco se hizo anuncio oficial por cualquier medio al efecto de que alguna de las papeletas jugadas por el demandante no hubiesen sido selladas; que la papeleta P–5357569 acertó a los seis ganadores de las carreras celebradas; que al comparecer al siguiente día a cobrar el dividendo que le correspondía a los jugadores agraciados que ascendió a $3,220, se le informó que la papeleta P–5357569 en la cual se perforaron los números correspondientes a los seis ganadores no había sido "sellada oficialmente"; y termina alegando que la empresa del hipódromo viene obligada a pagarle el premio correspondiente a la papeleta por él jugada "ya que la misma fue entregada para ser sellada oficialmente a su empleado a su servicio y en el desempeño de sus funciones . . . y si éste por su negligencia y descuido no procedió conforme debía sellar dicha papeleta, por su negligencia y descuido le es responsable al demandante de su actuación." Suplica se condene a los demandados a satisfacerle la suma de $3,220.00.(²)

La empresa demandada solicitó un término adicional de 10 días para formular alegaciones que le fue prontamente concedido en 23 de agosto de 1960. No es hasta siete meses después que solicita la desestimación de la demanda invocando para ello las disposiciones del Art. 311 del Regla-

---

(²) En caso de que el demandante prevaleciera en su reclamación, el importe de los daños tendría que calcularse tomando en consideración que el divisor se aumentaría por una parte más que hubiese resultado agraciada, y por tanto, el dividendo sería menor de $3,220. Igualmente ocurre en cuanto al dividendo para las partes que acertaron 5 ganadores.

mento Hípico entonces vigente, 15 R.&R.P.R. 184-311, que leía como sigue:

"Cuando surgiere *una controversia en relación con el pago* de un cuadro o papeleta se notificará de ello por la persona encargada en el hipódromo de hacer tal pago y por los interesados, por escrito, al Director Hípico, quien someterá el asunto a la Comisión Hípica de Puerto Rico dentro de las 48 horas de haberse celebrado las carreras a que corresponde el cuadro o papeleta en cuestión, exponiendo en tal escrito los hechos del caso. Recibida tal notificación, la Comisión investigará el caso, oyendo a los interesados, administrador del pool, jueces del pool y a la persona natural o jurídica explotadora del pool, en que se hubiere jugado tal cuadro o papeleta, los cuales comparecerán, luego de ser notificados por escrito para ello y cuando se trate de una controversia de esta índole, se suspenderá el pago de la parte del pool que estuviere en controversia hasta tanto recaiga la decisión final de la Comisión, que, en todo caso, será dentro de los 5 días siguientes al en que se le hubiere hecho la notificación antes mencionada.

"Tal decisión se notificará por la Comisión por escrito, no más tarde del día siguiente al en que se hubiera dictado a la persona natural o jurídica explotadora del pool, y a los demás interesados, y será final y concluyente para todos los efectos."

El tribunal de instancia entendió que el no haber acudido el demandante al procedimiento administrativo a que se refiere dicho artículo le priva de la causa de acción que ahora ejercita, y en su consecuencia, procedió a desestimar la demanda. Acordamos revisar esta actuación.

Procede advertir inmediatamente que el artículo transcrito, en el cual se funda la empresa demandada, figuraba en la reglamentación de la operación y escrutinio *manual* del *pool* y no en la referente a la operación *mecánica*, que como supletoria se adoptó por la anterior Comisión Hípica en 15 de diciembre de 1956, 15 R.&R.P.R. 184-351 a 184-367.(³)

---

(³) Actualmente está vigente el Reglamento Hípico de 1962, aprobado por la Junta Hípica en 14 de diciembre de 1961; por el Gobernador, en 23 de febrero de 1962, y radicado en el Departamento de Estado en 2 de abril de 1962, fecha desde la cual está en vigor. Por la Sec. XV, relativa a su vigencia, se derogan expresamente "las Reglas y Reglamentos Hípicos anteriores."

Es preciso, pues, que analicemos estas disposiciones sobre el juego de *pool* y su operación manual para poder fijar debidamente el alcance verdadero del concepto "controversia en relación con el pago de un cuadro o papeleta", que es a nuestro juicio la clave que nos dará la solución a la única cuestión envuelta en el presente recurso.

En lo pertinente, el Art. 301, 15 R.&R.P.R. 184–301, dice que se entenderá por juego de *pool* un sistema de jugadas consistente en acertar el mayor número de caballos ganadores y el mayor número de caballos ganadores ("sistema de 5 y 6") menos uno de un día de carreras y que aparecieren en las papeletas y cuadros de combinaciones escritas, *recibidas y selladas debidamente en la caseta del pool y depositadas en las urnas oficiales;* (⁴) el 304, 15 R.&R.P.R. 184–304, señala que el *pool* será abierto al público a las 10:00 a.m. del día de carreras y será cerrado 15 minutos antes de verificarse la primera carrera; el 305, 15 R.&R.P.R. 184–305, provee que los cuadros y papeletas una vez sellados, serán separados, depositándose los originales y duplicados en las urnas y entregándose el triplicado al interesado; el 308, 15 R&R.P.R. 184–308, indica que al cerrarse el *pool* y antes de cerrarse las urnas, los jueces de *pool* harán un examen general del local en que se sellen los cuadros y papeletas *"hasta convencerse de que no se ha quedado sin depositar en las urnas algún cuadro o papeleta de los sellados legalmente;"* el párrafo 4 del 312(a), 15 R.&.R.P.R. 184–312(a), dispone que: "Ningún cuadro, papeleta o cualquier otra forma impresa que se autorice y que se utilice en relación con y para jugadas de apuestas en el pool, tendrá valor ni conferirá acción ni derecho alguno contra la persona natural o jurídica que opere el pool del hipó-

---

(⁴) El Art. 611 del actual Reglamento sigue sustancialmente esta redacción, excepto que omite la referencia a las combinaciones escritas y al depósito en las urnas oficiales. En su lugar se refiere a que las combinaciones sean *registradas* debidamente, ya que no se utiliza el sistema de urnas para el depósito sino el de registro en hojas de cotejo a que alude el Art. 629.

dromo en que hayan de jugarse tales cuadros, papeletas o impresos *hasta tanto, y a menos que hayan sido entregados y sellados en la caseta o casetas* que dentro del hipódromo correspondiente se hayan autorizado por la Comisión Hípica de Puerto Rico para efectuar tales jugadas; disponiéndose sin embargo, que la persona natural o jurídica que opere el pool del hipódromo en que hayan de jugarse tales cuadros, papeletas o impresos, *será responsable del importe del premio que pueda corresponder a dicho cuadro o papeleta jugado por el público a través de sus agentes en la isla, a menos que dicha persona natural o jurídica antes de la terminación de las carreras de ese día, entregue al jurado una lista certificada contentiva del número de serie de los cuadros y papeletas no devueltos ni sellados por sus agentes*, especificando sobre cada grupo de número de serie, el nombre del agente, el número de la agencia y su localización, debiendo además dicha persona natural o jurídica publicar un duplicado de dicha lista certificada en la prensa dentro de los tres días siguientes a la celebración de las carreras, o en el programa oficial de carreras.   En tal caso, la persona natural o jurídica solamente será responsable del importe del impreso y del valor de las combinaciones pagadas a su agente."   (Bastardillas nuestras.)

■ Parece claro de un examen en conjunto de todas las disposiciones reseñadas que la controversia que debe someterse dentro de 48 horas de la celebración de las carreras a la Comisión Hípica, a través del Director Hípico, presupone una combinación *recibida, sellada debidamente y depositada en las urnas oficiales*, o sea, una que tenga opción al premio para quienes acierten el mayor número de ganadores por haber cumplido con todos los requisitos que se fijan para los que participan válidamente en el escrutinio.   No puede comprender el caso de una combinación que no fue entregada y sellada pues en cuanto a ésta, la empresa que opera el hipódromo responde *del importe del premio* a menos que antes de la terminación de las carreras entregue al jurado una lista

del número de serie de los cuadros y papeletas no devueltos ni sellados por sus agentes, la cual se publicará dentro de los tres días siguientes a la celebración de las carreras o en el programa oficial, en cuyo caso sólo será responsable del importe de las combinaciones pagadas por el apostador.

El Art. 311 tiene su precedente en el Art. 205 del Reglamento Hípico de 1933, aprobado en 25 de enero de dicho año, que disponía que cuando surgía una controversia en relación con el pago de un cuadro o papeleta se notificaría de ello a la persona encargada en el hipódromo de hacer tal pago, y por los interesados, por escrito, a la Comisión Hípica dentro de las 48 horas de haberse celebrado las carreras. Ahora bien, el Art. 207(a) de ese mismo reglamento no concedía opción alguna al premio a ninguna combinación "hasta tanto y a menos que hayan sido entregadas y selladas en la caseta o casetas que dentro del hipódromo correspondiente se hayan autorizado por la Comisión Hípica Insular para efectuar tales jugadas." Vemos, pues, cómo desde sus orígenes, la controversia en relación con el pago de un cuadro o papeleta se refería únicamente a una combinación debidamente entregada y sellada.

En relación con la operación mecánica del *pool*, el Art. 6 del Reglamento Supletorio para la Operación Mecánica del Pool, 15 R&R.P.R. 184–356, provee que una vez registrados en el *pool* todos los impresos jugados, la empresa preparará una hoja de cotejo que incluirá el número de serie de cada impreso registrado, el nombre, número y dirección del agente, el número de los caballos seleccionados por el jugador en cada carrera, el total de combinaciones jugadas en cada impreso y el total de cuadros y papeletas vendidos. El original de esta hoja se le entregará al agente. El Art. 5(b), 15 R.&R.P.R. 184–355, requiere a la empresa que lleve un récord del número de serie de todos los impresos nulos y de los no devueltos por el agente. Finalmente, el Art. 8, 15 R.&R.P.R. 184–358, dispone que cualquier cuadro o papeleta que aparezca en la hoja de cotejo como no devuelto

no podrá participar en el escrutinio, y en su segundo párrafo, que "[n]ingún cuadro o papeleta tendrá valor ni conferirá acción ni derecho alguno contra la asociación *hasta tanto y a menos que los mismos sean entregados y registrados en el pool,*" *pero la empresa responderá del importe del premio que pueda corresponder a dicho cuadro o papeleta,* a menos que la combinación figure en la lista de impresos nulos o no devueltos que se exige según el Art. 5(b). Siguiendo el mismo razonamiento expuesto al discutir la reglamentación para la operación manual del *pool,* tenemos que concluir *mutatis mutandi,* que cuando se trata de la operación mecánica del *pool* la controversia sobre pago a que se refiere el Art. 311(5) es aquélla que puede surgir en cuanto a una combinación debidamente entregada y *registrada,* pero no a una que no participó en el escrutinio precisamente porque no fue registrada conforme se exige por la reglamentación.

Una situación similar se consideró hace muchos años en *Torres* v. *P.R. Racing Corporation,* 40 D.P.R. 441, resuelto en 21 de enero de 1930,(6) en que el demandante inició una acción en reclamación de daños por quebrantamiento contractual(7) contra la Porto Rico Racing Corporation. Torres preparó una combinación, que entregó a un agente hípico para ser sellada, en un impreso que entre otras condiciones estipulaba que las combinaciones se enviarían por mediación de la

---

(5) La Sec. 18 del reglamento supletorio lee: "Cuando el pool sea operado mecánica o electrónicamente, regirá este reglamento supletorio y además cualquier disposición del reglamento anterior [sobre operación manual del pool] que no esté en conflicto con este reglamento supletorio."

(6) Aparentemente el Art. 207(a) del Reglamento de 1933 fue insertado con motivo del resultado a que se llegó en el caso de *Torres.*

(7) Posteriormente, en *Fernández* v. *Las Monjas Racing Corp.,* 52 D.P.R. 787 (1938), sin hacer referencia al caso de *Torres,* se resolvió que las relaciones existentes entre la empresa operadora de un hipódromo y el jugador de un cuadro no son de naturaleza contractual. Tampoco se consideró *Felicié* v. *Porto Rico Racing Corp.,* 38 D.P.R. 475 (1928), en donde se alude al "contrato de apuestas para el *pool.*"

Esta cuestión no está envuelta en el presente caso en que la reclamación se funda en la alegada negligencia y descuido del empleado de la demandada.

Porto Rican Express Company o en automóvil y en caso de que no llegara a tiempo se devolvería la cantidad jugada, no habiendo derecho a ninguna otra reclamación. El agente llegó al hipódromo con tiempo amplio para transcribir las combinaciones en unos impresos oficiales antes de presentarlas para ser selladas, pero se entretuvo visitando las cuadras, y como resultado de la tardanza la combinación del demandante *no fue transcrita ni sellada*. Dijo el Tribunal, a las págs. 444 y 445:

"La transcripción de la papeleta provisional en otros impresos oficiales en blanco (sólo obtenibles en el hipódromo) era una condición previa al acto de sellarla. Al aceptar la corporación la papeleta en forma provisional, asumió la obligación de convertirla en una papeleta del *pool*. El apostador que pagó su papeleta en Ponce no tenía motivo alguno para suponer que la corporación intentaba evadir esa obligación rehuyendo toda responsabilidad por la negligencia de sus agentes o empleados a este respecto, de acuerdo con los términos de la duodécima cláusula. Si tal fue la intención de la corporación al tiempo de redactar el impreso, hubiérale sido completamente fácil decirlo en lenguaje claro e inequívoco. Inmiscuir en el contrato ante nos semejante intención, siguiendo la letra de la duodécima cláusula y pasando por alto todo lo demás, sería (parafraseando a Corpus Juris, *supra*) permitir que la corporación induzca a sus clientes a contratar con ella bajo la suposición de que sus palabras quieren decir una cosa, mientras que espera que la corte adopte una interpretación por virtud de la cual significarían otra cosa que la beneficie más.

"Resolvemos, por consiguiente, que a tenor del significado de la cláusula duodécima, la papeleta de que se trata llegó a poder del administrador del *pool* a tiempo de ser sellada, por haber llegado al hipódromo bajo la custodia del agente de la demandada con tiempo amplio para ser transcrita por él o por otros agentes o empleados de la corporación, de acuerdo con los términos del contrato, y para ser presentada con el fin de sellarla y depositarla en el *pool*."

Un examen de los hechos alegados en la demanda comprueba que no se trata de una papeleta que fue sellada y registrada según se exige por las disposiciones reglamentarias;

818

más bien, se alega expresamente que al demandante se le negó el pago del premio porque su combinación no había sido "sellada" oficialmente. Siendo ello así, no estaba obligado a formular la reclamación a que se refiere el Art. 311; no ha surgido una controversia en relación con el pago de la papeleta, pues según hemos dejado demostrado, esta disposición sólo cubre los casos de las jugadas no sólo entregadas, sino registradas debidamente por la empresa. Es por eso que la acción ejercitada se refiere expresamente a la negligencia, descuido y falta de diligencia del empleado de la demandada como la actuación que da origen a la demanda. Las alegaciones formuladas van aun más lejos y exponen afirmativamente hechos negando anticipadamente la defensa que el Reglamento le brinda a la demandada, o sea, se dice que en la hoja de cotejo no se figuró o incluyó el número de serie de la papeleta alegadamente agraciada.

De todo lo expuesto se deduce que es improcedente la desestimación ordenada. *Se revocará la sentencia dictada por el Tribunal Superior, Sala de Humacao, en 5 de julio de 1961, y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*